Opinión de conformidad emitida por
el Juez Asociado Se-ñor Martínez Torres,
a la que se unen los Jueces Asocia-dos Señores Kolthoff Caraballo y Rivera García.
Una vez más tenemos ante nuestra consideración la ra-zonabilidad del requerimiento de documentos en manos de un tercero. Nos corresponde determinar quiénes tienen le-gitimación activa para solicitar la supresión de unos docu- *430 mentos obtenidos de las cuentas bancarias de unas corpo-raciones contra las que no hay acusación alguna. Los acusados y peticionarios son sus únicos accionistas, en su carácter personal. Asimismo, nos corresponde determinar si dentro del amplio poder investigativo que tiene el Secre-tario de Hacienda, este puede subcontratar para la inves-tigación de planillas de contribución sobre ingresos.
Evaluadas las controversias, concluimos que los peticio-narios no cuentan con legitimación activa para solicitar la supresión de la evidencia obtenida de las cuentas banca-rias corporativas, ya que carecen de una expectativa legí-tima de intimidad sobre dichas cuentas. De igual forma, determinamos que el Secretario de Hacienda cuenta con la facultad de contratar servicios profesionales o consultivos para evaluar irregularidades en las planillas de los contribuyentes. Por consiguiente, estamos conformes con la confirmación del dictamen del Tribunal de Apelaciones.
I
Las Comisiones de Hacienda y de Agricultura de la Cá-mara de Representantes realizaron una investigación so-bre alegadas irregularidades en la otorgación de créditos contributivos agrícolas. De dicha investigación legislativa, la Cámara de Representantes refirió un informe al Depar-tamento de Justicia y al Departamento de Hacienda para la investigación de posibles delitos sobre evasión contributiva. En el referido informe legislativo, se estable-ció la posible comisión de delitos contributivos por parte de los acusados y peticionarios, Luis P. Costas Elena y Hazel A. Russell McMillan. La entonces Secretaria de Justicia, Hon. Anabelle Rodríguez Rodríguez, refirió el asunto al Departamento de Hacienda para la investigación inicial de los posibles delitos contributivos. El Departamento de Hacienda hizo varios requerimientos al Banco Bilbao Vizcaya *431 Argentaría (B.B.V.A.) y a otras instituciones financieras, entre ellas Charles Schwab, para que le indicaran y le fa-cilitaran los números de cuentas bancarias de los acusados y peticionarios Costas Elena y Russell McMillan, así como de las corporaciones Demeter Internacional, Diógenes International Consulting Corp., RR. Agro-Térra International Corp., Embryo Service Inc. y Limones Agro-P.R. Inc.
Asimismo, para determinar si los peticionarios Costas Elena y Russell McMillan y sus corporaciones cometieron delitos contributivos, la División de Evasión Contributiva del Departamento de Hacienda, de forma ex parte, solicitó al Tribunal de Primera Instancia que emitiera órdenes de registro de las cuentas bancarias de los acusados y peticio-narios, así como sus corporaciones. Para estas solicitudes, se invocó la facultad que le confiere al Secretario de Hacienda la Sec. 6122(a) del Código de Rentas Internas, 13 L.P.R.A. sec. 8121(a), para hacer investigaciones y solicitar documentos con el objetivo de establecer la responsabilidad tributaria de un contribuyente(1)
Estas solicitudes estuvieron fundamentadas en una de-claración jurada prestada por la Agente Especial Fiscal de Evasión Contributiva del Departamento de Hacienda, Sra. Luz Yolanda Bonilla López. En la declaración jurada, la Agente Especial declaró que se encontraba realizando una investigación de los acusados y sus corporaciones en virtud de la facultad que confiere el Código de Rentas Internas al Secretario de Hacienda. Asimismo, relató que la investiga-ción era de carácter confidencial y que surgió a raíz de un referido de la Comisión de Hacienda y la Comisión de Agri-cultura de la Cámara de Representantes.
*432 El Tribunal de Primera Instancia expidió las órdenes de registro de las cuentas bancarias. Del registro realizado por el Departamento de Hacienda de las cuentas bancarias de los acusados y sus corporaciones en el B.B.V.A. y la ins-titución Charles Schawb, se obtuvo la información que dio base a las acusaciones criminales presentadas contra el Sr. Luis Costas Elena y la Sra. Hazel A. Bussell McMillan por el Ministerio Público el 4 de mayo de 2005. Las acusacio-nes les imputaban haber cometido delitos de evasión con-tributiva y de proveer información falsa en sus planillas de contribución sobre ingresos.(2)
Por otra parte, para la investigación del caso, el Depar-tamento de Hacienda contrató los servicios de la Conta-dora Pública Autorizada con práctica privada, Lydia E. Márquez Vázquez. A esta se le encomendó la realización del examen, la investigación y el análisis de las planillas de contribución sobre ingresos de los acusados y peticiona-rios y la información obtenida del registro de las cuentas bancarias en cuestión. Del análisis e investigación reali-zada por la CPA Márquez Vázquez de las planillas sobre contribución sobre ingresos de los acusados, el Departa-mento de Hacienda concluyó que los peticionarios cometie-ron los delitos señalados anteriormente. La CPA Márquez Vázquez se convirtió así en testigo del Ministerio Público.
Luego de obtenida dicha información, los acusados y pe-ticionarios presentaron una moción de supresión del testi-monio de la CPA Márquez Vázquez. Alegaron que como la testigo no era empleada o funcionaría del Departamento de Hacienda, esta no tenía autoridad en ley para examinar e *433 investigar las planillas de contribución sobre ingresos de los acusados y que, por el contrario, sus actuaciones cons-tituían una violación expresa de la ley y la reglamentación aplicable. Los peticionarios adujeron que la ley y la regla-mentación en cuestión solo permite que sean ciertos em-pleados o funcionarios públicos los únicos que tengan fa-cultad para examinar e investigar una planilla de contribución sobre ingresos de un contribuyente en Puerto Rico.
En virtud de lo anterior, los peticionarios solicitaron la supresión del testimonio de la CPA Márquez Vázquez en el juicio en su fondo ante el supuesto de que era el resultado de información obtenida ilegalmente. Los peticionarios también solicitaron la supresión de la evidencia documen-tal obtenida. Argumentaron que no fueron notificados del requerimiento de los documentos bancarios y que la infor-mación bancaria fue adquirida sin mediar una orden judicial.
Por su parte, el Ministerio Público replicó ambas mociones. En cuanto a la solicitud de supresión del testi-monio de la CPA, argumentó que el derecho invocado por los acusados no impide que una persona bajo contrato con el Departamento de Hacienda sea designada para evaluar la información contributiva de los individuos. En lo que respecta al asunto de la evidencia documental, el Ministe-rio Público alegó que los registros se hicieron con una or-den judicial, por lo que procedía que la defensa probara que medió alguna de las razones que se mencionan en la Regla 234 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, para suprimir la evidencia.
El 23 de noviembre de 2005 la defensa presentó una moción suplementaria en la que adujo que el registro para obtener los números de las cuentas bancarias se hizo sin que mediara una orden judicial o notificación previa a los acusados. Asimismo, alegó que las órdenes de registro de las cuentas bancarias no se expidieron previa demostra- *434 ción de hechos concretos y particularizados o causa probable, por lo que eran ilegales.
El 17 de octubre de 2006 el Tribunal de Primera Instan-cia declaró “con lugar” la moción de supresión en cuanto a toda la evidencia obtenida por el Estado mediante el regis-tro de las cuentas bancarias personales de los acusados. Razonó el foro primario, luego de un estudio del requeri-miento de la solicitud de registro de documentos bancarios y la declaración jurada que la acompañaba, que el registro de las cuentas bancarias fue llevado a cabo mediante una orden judicial inválida porque no hubo causa probable para su expedición.
En cuanto a la supresión de la evidencia obtenida del registro de las cuentas bancarias de las corporaciones, el Tribunal de Primera Instancia determinó que el requeri-miento del número de las cuentas bancarias de los acusa-dos y las corporaciones no fue irrazonable ni contrario a derecho, ya que estos no albergaban una expectativa de intimidad sobre el número de las cuentas bancarias. En cuanto a las órdenes de registro de los documentos banca-rios, el foro primario expuso que nada en las solicitudes de esas órdenes o en la declaración jurada acompañada, “alu-de de forma específica y detallada [a] las razones por las cuales los acusados estaban siendo investigados, ni [a] la necesidad de los documentos para la investigación”. Apén-dice de la Petición de certiorari, pág. 213. Por ello, el tribunal declaró “con lugar” la solicitud de supresión de evi-dencia de la información referente a las cuentas bancarias de los acusados. En cuanto a la solicitud de supresión de la evidencia relacionada con las cuentas bancarias de las cor-poraciones, el foro primario determinó que los peticiona-rios no contaban con legitimación activa para invocar la regla de exclusión en cuanto a las cuentas bancarias de las corporaciones, ya que ese es un derecho que únicamente puede ser invocado por la persona agraviada, a saber, las corporaciones.
*435 Referente a la solicitud de supresión del testimonio de la CPA Márquez Vázquez, el Tribunal de Primera Instan-cia no dio paso a ella por entender que el Secretario de Hacienda tenía autoridad en ley para otorgar contratos de servicios profesionales o consultivos a individuos y entida-des privadas, para que le asistan en su función investiga-tiva. El foro primario sostuvo que “los departamentos, agencias e instrumentalidades de gobierno tienen facultad para otorgar contratos de servicios profesionales o consul-tivos a individuos y entidades privadas en virtud de la Ley Núm. 237 de 31 de agosto de 2004, 3 L.P.R.A. secs. 8611-8615 Apéndice de la Petición de certiorari, pág. 200.
En reconsideración, el foro primario expresó que el ar-gumento en cuanto a que los peticionarios podían cuestio-nar el registro de las cuentas bancarias de las corporacio-nes porque éstas son íntimas o familiares no se presentó oportunamente, aparte de que los certificados de incorpo-ración presentados no cumplían con lo exigido por ley a las corporaciones íntimas o familiares.
Inconformes, los acusados presentaron ante el Tribunal de Apelaciones una petición de certiorari. Allí solicitaron la revocación de aquella parte de la resolución emitida por el foro primario que denegó la supresión de la evidencia ob-tenida por el Estado como consecuencia del registro ilegal de las cuentas bancarias de las corporaciones pertenecien-tes a los acusados y que denegó la supresión del testimonio de la CPA Márquez Vázquez. El foro intermedio emitió una resolución en la que denegó la expedición del auto de cer-tiorari solicitado, por coincidir con el Tribunal de Primera Instancia en que los comparecientes carecían de legitima-ción activa para solicitar la supresión de la evidencia obte-nida de las cuentas bancarias corporativas. El foro apela-tivo sostuvo que no procedía la supresión del testimonio de la CPA Márquez Vázquez por los mismos fundamentos que entendió el foro primario.
*436 Los acusados y peticionarios recurren ante nos y seña-lan que es errónea la determinación del foro apelativo in-termedio que dispuso que carecen de legitimación activa para solicitar la supresión de los documentos obtenidos del registro de las cuentas bancarias de las corporaciones. Asi-mismo, cuestionan la admisión del testimonio de la CPA Lydia E. Márquez Vázquez como evidencia, ya que esta no es empleada del Departamento de Hacienda sino una con-tratista independiente. El 28 de abril de 2008 expedimos el auto de certiorari y ambas partes presentaron sus alegatos.
II
“Como parte de la investigación que precede a la impu-tación judicial del delito, se recurre a procedimientos diri-gidos a obtener evidencia física incriminatoria.” (Escolio omitido.) O.E. Resumil de Sanfilippo, Práctica jurídica de Puerto Rico: derecho procesal penal, Orford, Equity, 1990, T. 1, Sec. 8.1, pág. 203. Uno de los medios para obtenerla es “practicar registros de personas o allanamientos de lugares con el propósito de registrar y/o incautarse de material que sirva como prueba para sostener las imputaciones”. Id.
La Cuarta Enmienda a la Constitución de Estados Uni-dos protege a los ciudadanos contra registros, allanamien-tos e incautaciones irrazonables. Específicamente dispone:
No se violará el derecho del pueblo a la seguridad de sus personas, hogares, documentos y pertenencias, contra regis-tros y allanamientos irrazonables, y no se expedirá ningún mandamiento, sino a virtud de causa probable, apoyado por juramento o promesa, y que describa en detalle el lugar que ha de ser allanado, y las personas o cosas que han de ser deteni-das o incautadas. Emda. IV, Const. E.E.U.U., L.P.R.A., Tomo 1, ed. 2008, pág. 185.
Dicha disposición establece el alcance mínimo de la pro-tección homologa contenida en el Art. II, Sec. 10, de la *437 Constitución de Puerto Rico, L.P.R.A., Tomo 1. En RDT Const. Corp. v. Contralor I, 141 D.P.R. 424, 435 (1996), explicamos que anteriormente, para determinar si una in-vestigación constituía un registro bajo la Cuarta Enmienda, se utilizaba el criterio de “posesión o propiedad”. Es decir, para alegar una violación al amparo de esta norma, la persona agraviada debía demostrar que tenía un derecho propietario o la posesión efectiva sobre la cosa o el lugar registrado. Id.
A partir de la decisión del Tribunal Supremo de Estados Unidos en Katz v. United States, 389 U.S. 347 (1967), el enfoque tomó otro giro y desde ese momento el criterio rector para evaluar si existe una violación del derecho consa-grado en la Cuarta Enmienda es evaluar si la persona afec-tada alberga una expectativa de intimidad sobre el lugar o artículo a ser registrado y si tal expectativa es razonable a la luz de los criterios prevalecientes en la sociedad. RDT Const. Corp. v. Contralor I, supra, pág. 436. Véanse: California v. Ciraolo, 476 U.S. 207, 211 (1986); Smith v. Maryland, 442 U.S. 735, 740 (1979).
Para la expedición de órdenes de registro y allana-miento se ha establecido un procedimiento específico que requiere que la autoridad judicial las emita. Resumil de Sanfilippo, op. cit., Cap. 9., Sec. 9.1, pág. 212. Particular-mente, la Constitución de Puerto Rico ha elevado a rango constitucional el derecho de excluir como prueba en los tribunales la evidencia obtenida en violación de la protección que establece la disposición constitucional. Resumil de Sanfilippo, op. cit, Cap. 8., Sec. 8.1, pág. 204. En la última oración del Art. II, Sec. 10 de nuestra Constitución, L.P.R.A., Tomo 1, ed. 2008, pág. 327, está incluida expresa-mente la regla de exclusión, la cual dispone que la “[e] videncia obtenida en violación a esta sección será inad-misible en los tribunales”. El desarrollo de esta regla en la jurisdicción *438 federal ha sido un tanto distinto. Nació jurisprudencial-mente en 1914 con la decisión emitida en Weeks v. United States, 232 U.S. 383 (1914). Véase E.L. Chiesa Aponte, De-recho Procesal Penal: Etapa Investigativa, San Juan, Pubs. JTS, 2006, pág. 111.
La moción de supresión de evidencia es el mecanismo apropiado para evaluar “la determinación de admisibilidad de evidencia”. Chiesa Aponte, op. cit., pág. 140. La Regla 234 de Procedimiento Criminal, supra, regula la moción de supresión de evidencia. Dispone, en lo pertinente:

Regla 234. Allanamiento; moción de supresión de evidencia

La persona agraviada por un allanamiento o registro ilegal podrá solicitar del tribunal ... la supresión de cualquier evi-dencia obtenida en virtud de tal allanamiento o registro, o la devolución de la propiedad, por cualquiera de los siguientes fundamentos:
(a) Que la propiedad fue ilegalmente ocupada sin orden de allanamiento o registro.
(b) Que la orden de allanamiento o registro es insuficiente de su propia faz.
(c) Que la propiedad ocupada o la persona o sitio registrado no corresponde a la descripción hecha en la orden de allana-miento o registro.
(d) Que no había causa probable para creer en la existencia de los fundamentos en que se basó la orden de allanamiento o registro.
(e) Que la orden de allanamiento fue librada o cumplimen-tada ilegalmente.
(f) Que es insuficiente cualquier declaración jurada que sir-vió de base a la expedición de la orden de allanamiento porque lo afirmado bajo juramento en la declaración es falso, total o parcialmente.
En virtud de la regla de exclusión, cuando la evidencia sea obtenida en violación del mandato constitucional y de lo dispuesto por esta regla, el tribunal deberá suprimir la evidencia obtenida. En consecuencia, esta no será admisi-ble en los tribunales como prueba sustantiva de la comisión de un delito. Pueblo v. Ramos Santos, 132 D.P.R. 363, 371 (1992). De esta forma, se logran los objetivos dispues- *439 tos en la regla de exclusión, que persiguen: (1) proveer un remedio efectivo a la víctima del registro y allanamiento irrazonable o ilegal; (2) evitar que el gobierno se beneficie de sus propios actos ilegales; (3) preservar la integridad del tribunal, y (4) disuadir a los oficiales del orden público a que en el futuro no repitan las acciones objeto de la impugnación. Véase Pueblo v. Ramos Santos, supra, pág. 371.
Por ello, “[l]a presencia expresa de la regla de exclusión en la Constitución no tiene el efecto de ‘standing’ automático”. Chiesa Aponte, op. cit., pág. 118. “[E]se dere-cho constitucional expreso a la exclusión de evidencia ... tiene un titular: la persona que ha sufrido la violación ...” Id. Por lo tanto, “[n]o todo acusado beneficiado con la ex-clusión de la evidencia ilegalmente obtenida es la persona a quien la actuación gubernamental le violó sus derechos bajo la sección 10, esto es, su derecho a la intimidad”. íd., pág. 119.
Hemos señalado en el pasado que
... la referida protección no opera automáticamente por el mero hecho de que ocurra una intervención del Estado con un individuo. La garantía constitucional protege fundamental-mente a las personas y no a lugares. Para que ésta se active, es necesario determinar si existe un interés personal del indivi-duo sobre el lugar u objeto allanado, incautado o registrado, de modo que exista una expectativa razonable de intimidad. Es esta expectativa razonable de intimidad la que es protegida por la disposición constitucional. Por esto, si estamos ante la in-tervención del Estado con el individuo, hay que determinar si la persona, en efecto, tiene el derecho de abrigar la expectativa razonable de que su intimidad sea respetada para que enton-ces sea acreedor de la protección constitucional. (Enfasis suplido.) Rullán v. Fas Alzamora, 166 D.P.R. 742, 772 (2006). Véanse, además: Pueblo v. Loubriel, Suazo, 158 D.P.R. 371 (2003); E.L.A. v. P.R. Tel. Co., 114 D.P.R. 394 (1983); Pueblo v. Lebrón, 108 D.P.R. 324 (1979).
*440 III
Al analizar una solicitud de supresión de evidencia, tanto en esta jurisdicción como en la federal, hay que ana-lizar la legitimación activa del promovente. En la jurisdic-ción federal, el Tribunal Supremo de Estados Unidos “ha resuelto que quien invoca la regla de exclusión ha de tener ‘standing’, en el sentido de que no basta con ser el benefi-ciado con la exclusión de la evidencia: quien invoca la regla de exclusión —que es el remedio contra la violación cons-titucional— ha de ser la persona a quien se le ha violado la protección ‘sustantiva’ por así decirlo”. (Escolio omitido.) E.L. Chiesa, Los derechos de los acusados y la factura más ancha, 65 (Núm. 1) Rev. Jur. U.P.R. 83, 128 (1996). Véanse, además: Minnesota v. Olson, 495 U.S. 91 (1990); Rawlings v. Kentucky, 448 U.S. 98 (1980); United States v. Salvucci, 448 U.S. 83 (1980); Rakas v. Illinois, 439 U.S. 128 (1978). En esos mismos términos se expresa LaFave al disponer que “la evidencia adquirida en violación de la Cuarta En-mienda no es excluida automáticamente de los juicios cri-minales; un acusado con legitimación activa debe presen-tar una objeción a la presentación de esa evidencia”. (Traducción nuestra.) 6 LaFave, Search and Seizure Sec. 11.2(a), pág. 35 (2004).
Lo que esto significa es que
... sólo la persona quien ha sufrido la violación constitucional en relación a la protección contra detenciones, registros o in-cautaciones irrazonables, puede invocar la regla de exclusión, pues ésta no es sino el remedio que tiene quien sufre la viola-ción de su derecho constitucional. Así, pues, no todo acusado que pudiera beneficiarse con la exclusión de la evidencia ile-galmente obtenida tiene “standing” o legitimación activa para solicitar la supresión de la evidencia. Chiesa Aponte, op. cit. pág. 114.
Como señaló el Tribunal Supremo de Estados Unidos en Alderman v. United States, 394 U.S. 165, 171—172 (1969), *441 expresado por el Tribunal Supremo equivale a una exigen-cia de legitimación activa para el acusado promovente de “la supresión del producto de una violación de la Cuarta Enmienda puede instarse con éxito solo por aquellos cuyos derechos fueron violados por el registro en sí, no por aque-llos que fueron agraviados únicamente por la presentación de la evidencia perjudicial”. (Traducción nuestra.) Véase, además, Chiesa, op. cit., pág. 114.
Por nuestra parte, hemos expresado que ante una soli-citud de supresión de evidencia, hay que determinar: “(1) si el acusado que la solicita tiene [legitimidad] para invocar el privilegio; (2) en ausencia de orden, si le era posible al Estado obtenerla sin comprometer la eficacia del registro o la seguridad de sus agentes, y (3) la razonabilidad del registro.” Pueblo v. Ramos Santos, supra, pág. 371. Véase, además, Pueblo v. Lebrón, supra, pág. 328. También con-cluimos que “[u]na persona que se encuentra ilegalmente en un sitio no tiene legitimación activa para reclamar el derecho contra un registro irrazonable garantizado consti-tucionalmente, pues no tiene expectativa de intimidad alguna”. Pueblo v. Ramos Santos, supra, pág. 371. Estos pronunciamientos demuestran el reconocimiento por parte de este Tribunal del requisito en nuestro ordenamiento ju-rídico de legitimación activa para solicitar la supresión de evidencia al amparo de la Regla 234 de Procedimiento Criminal, supra. A esa misma conclusión llega el Prof. Ernesto Chiesa al señalar que “cualquier duda que había so-bre el requisito de standing, en Puerto Rico, para invocar la regla de exclusión, desapareció con Pueblo v. Ramos Santos. Así pues, no hay ‘factura más ancha’ en cuanto a la exigencia de ‘standing’ ”. (Escolio omitido y énfasis suplido.) Chiesa, Los derechos de los acusados y la factura más ancha, supra, págs. 128-129.
Tras hacer alusión a nuestros pronunciamientos en Pueblo v. Vargas Delgado, 105 D.P.R. 335 (1976), en cuanto a la falta de legitimación activa del acusado para solicitar la supresión de evidencia, el profesor Chiesa concluye que “lo *442 una moción de supresión de evidencia”. Chiesa, op. cit, pág. 118. Chiesa critica los pronunciamientos del Juez Aso-ciado Señor Rebollo López en su opinión concurrente, a la cual se unieron la entonces Juez Asociada Señora Naveira de Rodón y el entonces Juez Asociado Señor Hernández Denton, en Pueblo v. Rovira Ramos, 116 D.P.R. 945, 957 (1986), a los efectos de que "si el Estado pretende relacio-nar a un acusado con determinado material delictivo y así privarlo de su libertad con motivo de ello, dicho ciudadano debe tener el derecho automático de cuestionar la legalidad de la forma o manera en que el estado advino en posesión del referido material”. (Énfasis en el original.) Sobre ese particular el profesor Chiesa opina:
Esto no me parece persuasivo. La presencia expresa de la re-gla de exclusión en la Constitución no tiene el efecto de “standing” automático, aunque sí tiene la importantísima conse-cuencia de que no puede ser abolida por la jurisprudencia ni por la Asamblea Legislativa; se requeriría enmienda a la Constitución. Pero ese derecho constitucional expreso a la ex-clusión de evidencia es un derecho constitucional personal, que tiene un titular: la persona que ha sufrido la violación a la protección constitucional establecida en esa sección 10 de la Carta de Derechos. No todo acusado beneficiado con la exclu-sión de la evidencia ilegalmente obtenida es la persona a quien la actuación gubernamental le violó sus derechos bajo la sección 10, esto es, su derecho a la intimidad. Chiesa Aponte, op. cit, págs. 118-119.
La opinión disidente de la Jueza Asociada Señora Fiol Matta, a la cual se une el Juez Presidente Señor Hernández Denton, pretende resucitar el debate de Pueblo v. Rovira Ramos, supra, a pesar de que “[a] partir de Ramos Santos se acepta sin discusión la exigencia de ‘standing’ para que un acusado solicite la supresión de evidencia por cualesquiera de los fundamentos establecidos en la Regla 234 de Procedimiento Criminal”. Chiesa Aponte, op. cit, pág. 119. Lo cierto es que la opinión del Juez Asociado Señor Rebollo López en Pueblo v. Rovira Ramos, supra, no obtuvo los votos necesa-rios para convertirse en una expresión de este Tribunal. *443 Como expresamos en Delgado, Ex parte, 165 D.P.R. 170, 182-183 (2005): “Reiteradamente hemos sostenido que el Tribunal Supremo establece una norma exclusivamente me-diante un dictamen sostenido por una opinión firmada o una opinión per curiam” (Enfasis en el original.)
El debate quedó adjudicado en Pueblo v. Ramos Santos, supra, con la norma de expectativa razonable de intimidad, que luego fue reafirmada, entre otros, en Pueblo v. Ortiz Rodríguez, 147 D.P.R. 433, 440 (1999), Pueblo v. Valenzuela Morel, 158 D.P.R. 526, 539 (2003), y en Rullán v. Fas Alzamora, supra. No hay razón para apartarnos de esos precedentes. Impera aquí la doctrina de stare decisis. Véanse: Arizona v. Gant, 556 U.S. 332 (2009); Pueblo v. Díaz de León, 176 D.P.R. 913 (2009); Pueblo v. Camacho Delgado, 175 D.P.R. 1 (2008).
Hacer lo contrario, en total abstracción de la realidad cotidiana del Puerto Rico del siglo XXI, “convertiría la fac-tura más ancha en la factura más costosa jamás pagada por el Pueblo de Puerto Rico”. (Énfasis suprimido.) RDT Const. Corp. v. Contralor I, supra, pág. 469, opinión concu-rrente del Juez Asociado Señor Negrón García.
En conclusión, el standing o la legitimación activa es un requisito esencial para que el acusado pueda solicitar la supresión de la evidencia por cualquiera de los fundamen-tos dispuestos en la Regla 234 de Procedimiento Criminal, supra. Chiesa Aponte, op. cit., pág. 119. Dicha supresión se concederá “luego de reconocerse la existencia de una expec-tativa razonable de intimidad”. Id., pág. 120. Conscientes de la importancia de la legitimación activa de la persona que solicita la supresión de la evidencia, dejamos atrás el debate de Pueblo v. Rovira Ramos, supra, y señalamos en Pueblo v. Valenzuela Morell, supra, pág. 546 esc. 12, por voz del Juez Asociado Señor Rebollo López, que aunque el acusado hubiere solicitado la supresión de la prueba de cargo, dicha solicitud “no hubiese tenido éxito por la falta de un requisito que este Tribunal ha reputado como esen- *444 cial: la legitimación activa, la cual sólo se confiere luego de reconocerse la existencia de una expectativa razonable de intimidad”. (Enfasis suprimido.)
Por consiguiente, no es suficiente para solicitar la su-presión de la evidencia ser el propietario de la cosa incau-tada, incluso aunque la incautación sea producto de un re-gistro ilegal. Sería necesario acreditar una legítima expectativa de intimidad en relación con el registro. Rawlings v. Kentucky, supra. Véase, además, Chiesa Aponte, op. cit., pág. 115. Ahora bien,
[1] a expectativa razonable de intimidad implica primero que la persona haya exhibido una expectativa subjetiva de intimidad. No se trata de una simple reserva mental, sino de una conducta de actos afirmativos que demuestren, inequívocamente, la intención de alojar dicha expectativa. Y segundo, esa expectativa individual, así demostrada, tiene que ser una que la sociedad reconozca como razonable. (Énfasis suprimido.) Pueblo v. Ortiz Rodríguez, supra, pág. 442.
rv
Los tribunales federales han sido renuentes a la hora de reconocerle un derecho de intimidad a las corporaciones. Ello es así ya que las garantías “puramente personales”, como el privilegio contra la autoincriminación, no están disponibles para las corporaciones y otras organizaciones, pues la función histórica de la garantía está limitada a la protección de los individuos. Pueblo v. Ortiz Rodríguez, supra, pág. 442. Por ello, se ha dicho que las corporaciones no pueden reclamar ninguna igualdad con los individuos en lo que respecta al disfrute del derecho a la intimidad. Véase FCC v. AT & T Inc., 131 S.Ct. 1177, 179 L.Ed.2d 132 (2011). Estas están investidas con atributos públicos. Dis-frutan del privilegio de operar como entidades artificiales y tienen un impacto colectivo en la sociedad. California Bankers Assn. v. Shultz, 416 U.S. 21 (1974). Véase, ade- *445 más, W.M. Fletcher, Fletcher Cyclopedia of the Law of Corporations, Thomson West, 2010, Vol. 10, Sec. 4957.10.
En First Nafl Bank of Boston v. Bellotti, 435 U.S. 765, 778 esc. 14 (1978), el Tribunal Supremo federal reconoció que las garantías puramente personales no están disponi-bles para las corporaciones ni para otras organizaciones, y por lo tanto rehusó sostener que las corporaciones gozan de todos los derechos constitucionales que protegen a los individuos. Precisamente, el Tribunal llegó a esa conclu-sión por el supuesto de que la aplicación de una garantía constitucional a una corporación depende de la naturaleza, la historia y el propósito de esa garantía, y que de un aná-lisis de esos factores se debía concluir que el derecho a la intimidad está conceptualizado para ser invocado única-mente por personas naturales. Id.
En iguales términos se expresó el Juez Presidente Marshall en 1819 cuando aseguró que “una corporación es un ente artificial, invisible, intangible y existente únicamente ante la ley”. (Traducción nuestra.) Trustees of Dartmouth College v. Woodward, 17 (4 Wheat.) 518, 636 (1819). Por esa razón, las corporaciones no tienen derecho a las garan-tías puramente personales cuya función histórica ha sido limitada para la protección de los individuos. First Nat’l Bank of Boston v. Bellotti, supra, pág. 778 esc. 14. Por con-siguiente, varias decisiones reafirman que una corporación no goza del privilegio subyacente en la Quinta Enmienda a favor de la no autoincriminación, ni muchos menos del derecho a la intimidad. United States v. Morton Salt, 338 U.S. 632 (1950); Wilson v. United States, 221 U.S. 361 (1911).
On the contrary, treatises in print around the time that Congress drafted the exemptions at hand reflect the understanding that the specific concept of “personal privacy,” at least as a matter of common law, did not apply to corporations. See Restatement (Second) of Torts Sec. 6521, Comment c (1976) (“A corporation, partnership or unincorporated association has no personal right of privacy”); W. Prosser, Law of Torts Sec. 97, *446 pp. 641-642 (2d ed. 1955) (“A corporation or a partnership as such can have no personal privacy, although it seems clear that it may have an exclusive right to its name and its business prestige” (footnotes omitted)); cf. id., Sec. 112, at 843-844 (3d ed. 1964) (“It seems to be generally agreed that the right of privacy is one pertaining only to individuals, and that a corporation or a partnership cannot claim it as such” (footnotes omitted)); id., Sec. 117, at 815 (4th ed. 1971) (same). FCC v. AT & TInc., supra.
Como entidades artificiales dotadas con atributos públi-cos, las corporaciones tienen una expectativa de intimidad reducida cuando se trata de investigaciones públicas he-chas en un contexto regulatorio. Fletcher, op. cit., Sec. 4957.10, págs. 781-782. Las agencias del orden público tie-nen un derecho legítimo de asegurar que la actividad cor-porativa se lleve a cabo conforme a la ley y el interés público. Id.
A diferencia de las personas naturales, las corporacio-nes no tienen una vida íntima, sueños y pensamientos cuya privacidad desean proteger. Los atributos públicos de las corporaciones reducen la razonabilidad de su expecta-tiva limitada de intimidad. Fletcher, op. cit. Sin embargo, la naturaleza y el propósito de la entidad corporativa, así como la naturaleza del interés que se pretende proteger, determinará si ante circunstancias particulares la corpora-ción tiene un interés de intimidad que se pueda hacer valer. Id. Después de todo, las corporaciones comparten con los individuos el interés de mantener cierta información fuera del alcance del público general. En cambio, a diferen-cia de las personas naturales, las corporaciones son enti-dades altamente reglamentadas, cuya existencia está su-bordinada al cumplimiento de requisitos estatutarios que van dirigidos a proteger el interés público.
En nuestra jurisdicción hemos afirmado que “[ajunque en el caso de las corporaciones, la naturaleza de la expec-tativa de intimidad es menor que la que tienen las perso-nas, no por ello están desprovistas de toda protección contra intervenciones irrazonables y arbitrarias por parte del *447 Estado”. RDT Const. Corp. v. Contralor I, supra, pág. 442. En ese caso reconocimos que los clientes de un banco tie-nen una expectativa de intimidad sobre la información que la institución bancaria posee sobre ellos. Asimismo, a las corporaciones les cobija la protección del Art. II, Sec. 10 de nuestra Constitución. RDT Const. Corp. v. Contralor I, supra, pág. 442; E.L.A. v. Coca Cola Bott. Co., 115 D.P.R. 197, 209 (1984). También les protege la Cuarta Enmienda a la Constitución Federal. Véanse: Go-Barth Importing Co. v. United States, 282 U.S. 344 (1931); Silverthorne Lumber Co., Inc. v. United States, 251 U.S. 385 (1920); Hale v. Henkel, 201 U.S. 43 (1906).
V
En la jurisdicción federal, la jurisprudencia indica que cuando se analiza quién tiene legitimación activa para so-licitar la supresión de una evidencia obtenida de una cor-poración, la pregunta fundamental es si el acusado tiene una expectativa de intimidad protegida en el lugar en el que se realizó el registro o allanamiento. LaFave, op. cit., Sec. 11.3(d), pág. 178. Para determinar si existe esa expec-tativa, se debe tomar en consideración si el acusado estaba presente al momento de la búsqueda y si tenía algún inte-rés en el lugar registrado o los artículos allanados. Id.
En Puerto Rico no hemos tenido la oportunidad de ana-lizar directamente la legitimación activa de los oficiales de una corporación para solicitar la supresión de evidencia obtenida de las cuentas bancarias del ente corporativo. Sin embargo, en RDT Const. Corp. v. Contralor I, supra, tuvi-mos la oportunidad de analizar indirectamente la legitima-ción activa del oficial de una corporación y de la corpora-ción en sí, para impugnar un requerimiento de documentos hecho a un tercero. Allí la Contralora emitió varias citacio-nes formales a un banco para la producción de cierta evi-dencia documental sobre las cuentas bancarias de una cor- *448 poración y de su presidente y único accionista. Entre las controversias que nos planteamos estaba (1) si las perso-nas y las corporaciones poseen un derecho de intimidad sobre la información que los bancos tienen sobre su vida privada, sus transacciones y sus negocios, y (2) depen-diendo de lo anterior, si los demandantes poseían legitima-ción activa para impugnar el requerimiento de documentos que emitió la Contralora al banco. RDT Const. Corp. v. Contralor I, supra, pág. 435. Concluimos que el criterio decisivo para determinar si se trata de una información protegida constitucionalmente es la expectativa razonable de intimidad de los depositantes.
En la jurisdicción federal sí se ha analizado directa-mente el asunto de la legitimación activa de los accionistas de una corporación para solicitar la supresión de evidencia de documentos corporativos.(3) Así, por ejemplo, en Henzel v. U.S., 296 F.2d 650 (5to Cir. 1961), el Tribunal Federal de Apelaciones para el Quinto Circuito expresó que no todo funcionario de una corporación puede atacar un registro o allanamiento en la propiedad corporativa por el mero he-cho de que la evidencia obtenida pueda ser utilizada en su contra.(4) Pocos años después, ese mismo tribunal expresó lo siguiente en U.S. v. Britt, 508 F.2d 1052, 1055 (5to Cir. 1975):
When a man chooses to avail himself of the privilege of doing business as a corporation, even though he is its sole sha *449 reholder, he may not vicariously take on the privilege of the corporation under the Fourth Amendment; documents which he could have protected from seizure, if they had been his own, may be used against him, no matter how they were obtained from the corporation. Its wrongs are not his wrongs; its immunity is not his immunity.(5)
El Tribunal Supremo de Estados Unidos no se ha expre-sado directamente sobre la legitimación activa con la que cuentan los oficiales de una corporación para solicitar la supresión de evidencia corporativa. En cambio, ha anali-zado la legitimación activa de unos unionados para impug-nar el registro y allanamiento de la oficina de un sindicato obrero. En Mancusi v. DeForte, 392 U.S. 364 (1968), la con-troversia principal fue si en el área registrada los acusados albergaban una expectativa de intimidad. Dependiendo de ello, se determinaría si tenían o no legitimación activa para solicitar la supresión de la evidencia incautada.
Tras un análisis de las particularidades de la oficina en la que ocurrió el registro, así como de las actividades y el tiempo que los miembros de la unión pasaban en ella, el Tribunal concluyó que los unionados tenían legitimación activa para solicitar la supresión. Sin embargo, el Tribunal Supremo no concluyó que en todas las circunstancias se *450 tendrá legitimación activa. Esta se reconocerá siempre y cuando el peticionario pueda demostrar una expectativa legítima de intimidad en el lugar registrado. LaFave, op. cit., pág. 181.
VI
En nuestra jurisdicción, de ocurrir un registro o allana-miento ilegal en una cuenta bancaria corporativa, la corpo-ración puede cuestionar dicha intrusión, en virtud del de-recho que le hemos reconocido de invocar en su propio beneficio la cláusula constitucional contra los registros y allanamientos irrazonables. Ahora bien, en lo que respecta a la legitimación activa o standing de un accionista, presi-dente o empleado de una corporación para solicitar la su-presión de la evidencia obtenida de una corporación, las decisiones de los tribunales federales apuntan a que hay legitimación activa cuando el acusado tiene una expecta-tiva de intimidad protegida en el lugar en el que se realizó el registro o allanamiento. Por lo tanto, la mera posición en la estructura de la corporación no es suficiente para solici-tar la supresión. Es decir, el hecho de que sea accionista, funcionario o empleado de la corporación no otorga al fun-cionario corporativo, sin más, un derecho automático para solicitar la supresión de la evidencia obtenida.
No vemos razón para adoptar una norma distinta. A diferencia de la jurisprudencia reseñada, en la que el lugar registrado y de donde se obtiene la evidencia es un local u oficina, en el caso particular que nos ocupa, el lugar regis-trado y de donde se obtuvo la información que incrimina a los acusados, es un banco. En RDT Const. Corp. v. Contra-lor I, supra, resolvimos que las corporaciones tienen una expectativa de intimidad en la información que someten a los bancos. También señalamos que ante un registro de una cuenta bancaria corporativa, la corporación contaba *451 con legitimación activa para impugnar la validez de dicho registro.
Fundamentándose en RDT Const. Corp. v. Contralor I, supra, los acusados y peticionarios argumentan que para solicitar la supresión de evidencia, solo se debe demostrar que se posee una expectativa de intimidad razonable sobre la evidencia obtenida, independientemente de dónde se obtenga. Por ello, razonan que la jurisprudencia federal dista de la norma establecida en nuestra jurisdicción, pues según éstos en RDT Const. Corp. v. Contralor I, supra, es-tablecimos que “los depositantes están constitucional-mente protegidos contra registros ilegales de sus cuentas bancarias, pues lo determinante no es la titularidad del lugar donde se encuentre la evidencia ... sino la expecta-tiva de intimidad de los depositantes”. Petición de certio-rari, pág. 17. Lo mismo argumenta la Juez Asociada Se-ñora Fiol Matta en su opinión disidente. Identifica a los peticionarios como los depositantes.
Es cierto que los depositantes están constitucional-mente protegidos contra registros ilegales de sus cuentas bancarias. Esa norma no está en duda. Ahora bien, RDT Const. Corp. v. Contralor I, supra, no es autoridad para sostener que cualquier persona puede solicitar la supresión de evidencia con tan solo invocar un argumento de intimi-dad sobre la información obtenida. Llegar a esa conclusión significaría que toda persona que se beneficie con la supre-sión de una evidencia, tendría automáticamente la legiti-mación activa para presentar una moción de supresión. Por el contrario, la norma imperante es que resulta insufi-ciente alegar un interés posesorio o propietario en la cosa incautada cuya supresión se solicita, sin más, para acredi-tarse legitimación activa. Chiesa Aponte, op. cit., pág. 314.
En RDT Const. Corp. v. Contralor I, supra, en ningún momento le reconocimos al accionista una expectativa de intimidad en los documentos de la cuenta corporativa. Por el contrario, establecimos que la legitimación activa para *452 impugnar el requerimiento de documentos hecho al banco correspondía a la persona afectada por el registro, que de-mostrara la expectativa de intimidad sobre la prueba incautada. Por esa razón, concluimos que el accionista te-nía legitimación activa para impugnar el requerimiento de documentos hecho al banco sobre su cuenta bancaria, y asimismo la corporación tenía legitimación activa para im-pugnar el requerimiento de documentos hecho al banco so-bre la suya.
De acuerdo con lo anterior, la corporación, como ente jurídico separado y distinto de sus accionistas, cuenta con legitimación activa para invocar la regla de exclusión. Esto es así, ya que surge de la propia Regla 234 de Procedi-miento Criminal, supra, que regula la moción de supresión de evidencia, que quien presenta la moción es la “persona agraviada” por un registro o allanamiento ilegal. Pueblo v. Ramos Santos, supra.
En ese sentido, el caso ante nuestra consideración es claramente distinguible de lo resuelto en RDT Const. Corp. v. Contralor I, supra. Aquí la corporación no es sujeto de investigación. No existe acusación alguna contra las corpo-raciones intervenidas, sino que únicamente figuran como acusados el señor Costas Elena y la señora Russell McMillan. Solamente contra ellos pesan las acusaciones. La información bancaria obtenida en este caso es propie-dad de las corporaciones, personas jurídicas independien-tes, quienes son las agraviadas en su limitada expectativa de intimidad sobre esas cuentas y quienes son las únicas que pueden invocar derechos sobre la información que ellas le suministran a los bancos. Por lo tanto, como los peticionarios no albergan una expectativa de intimidad propia sobre la información bancaria, se encuentran impe-didos de invocar la supresión de los documentos bancarios.
Los acusados y peticionarios señalan que tienen legiti-mación activa para solicitar la supresión de la evidencia obtenida de las corporaciones porque ellos y las corporacio-
*453 nes son la “misma persona”, ya que operaban como una “sola unidad”. Petición de certiorari, pág. ll.(6) Según dichos argumentos aseveran que pueden invocar para su propio beneficio los derechos constitucionales que asisten a las corporaciones intervenidas. Estos argumentos tampoco nos convencen. Las corporaciones son entidades jurídicas separadas y distintas de la de sus accionistas. Por lo tanto, de ocurrir un registro en una cuenta bancaria de una cor-poración, es el ente corporativo y no sus accionistas quie-nes tienen la legitimación activa para solicitar la supresión de la evidencia. Véase RDT Const. Corp. v. Contralor I, supra. Es decir, la legitimación activa no es de toda persona acusada que pueda beneficiarse con la supresión, sino de la persona que sufrió la intrusión irrazonable con su intimidad. La norma jurisprudencial se inclina a reconocer legitimación activa en circunstancias en las que el registro se lleva a cabo en un lugar donde el accionista u oficial acusado abriga una expectativa razonable de intimidad. Mancusi v. DeForte, supra. Para una aplicación de esta norma, véase, e.g., United States v. Carrol, supra.
El que los peticionarios realizaran los depósitos en las cuentas corporativas no creó una expectativa razonable de intimidad de ellos sobre esas cuentas. Al depositar fondos allí lo hacían como oficiales de las corporaciones, para be- *454 neficio de estas. Por eso, eran las corporaciones y no los peticionarios los verdaderos depositantes. Resolver lo con-trario le daría también una expectativa de intimidad a cualquier persona —incluyendo un empleado o mensaje-ro— que realizara físicamente los depósitos en una cuenta de banco corporativa.
Tampoco hace diferencia que el Ministerio Público acu-sara a los accionistas y oficiales corporativos pero no a las corporaciones. Son los hechos los que llevan al fiscal a ejer-cer su discreción y presentar las acusaciones que entienda que corresponden. “[L]a Rama Ejecutiva tiene amplia dis-creción al momento de decidir a quién encausa o contra quién insta una acción criminal.” Pueblo v. Martínez Acosta, 174 D.P.R. 275, 281 (2008). Véase Wayte v. United States, 470 U.S. 598 (1985). “Los tribunales no deben in-tervenir en la discreción del Ministerio Público de acusar o no a una persona por determinado delito, salvo abuso de discreción por procesamiento selectivo fundamentado en consideraciones constitucionalmente inaceptables, lo que en este caso no ha sido demostrado.” Pueblo v. APS Healthcare of P.R., 175 D.P.R. 368, 388-389 (2009). Véase, además, Pueblo v. Dávila Delgado, 143 D.P.R. 157, 170 (1997).
Lo que estamos resolviendo es que la legitimación para presentar una moción de supresión al amparo de la Regla 234 de Procedimiento Criminal, supra, no se fundamenta en la titularidad de las cuentas bancarias que el fiscal se propone presentar en evidencia, sino en la expectativa ra-zonable de intimidad de los acusados respecto a esas cuentas. Al depositar sus fondos en las cuentas de otros, una persona no puede reclamar una expectativa razonable de intimidad porque no tiene el control de las cuentas. La existencia de una corporación no altera ese análisis sino que lo refuerza ante la naturaleza altamente regulada del ente corporativo.
La disidencia pretende reconocerle legitimación activa a los peticionarios porque estos “eran las únicas personas *455 naturales que tenían acceso a dichas cuentas corporativas, pues eran los únicos oficiales de la corporación”. Opinión disidente, pág. 491. Contrario a lo aseverado en la opinión disidente, la consecuencia de establecer una norma como esa es descorrer el velo corporativo. De otra forma, estaría-mos borrando la demarcación clara que existe en nuestro ordenamiento jurídico entre una corporación y sus oficiales.
Por todo lo anterior, concluimos que los acusados y pe-ticionarios carecen del criterio rector de expectativa razo-nable de intimidad que les daría la legitimación activa para impugnar el registro de las cuentas bancarias corporativas. Por ello, estos no pueden solicitar la supre-sión de la evidencia obtenida de estas cuentas.
VII
“Es política pública del Departamento de Hacienda del Estado Libre Asociado de Puerto Rico promover el cumpli-miento de las leyes fiscales, y así, fomentar un sistema contributivo en el cual la carga contributiva esté distri-buida de una manera justa.” Reglamento para la Adminis-tración y el Uso del Programa de Equidad Contributiva del Departamento de Hacienda, Reglamento Núm. 7022, 16 de agosto de 2005, Art. Ill, pág. 1. Por ello, el “Secretario del Departamento de Hacienda tiene la obligación de adminis-trar el sistema de rentas internas del Gobierno y cobrar las contribuciones impuestas por ley”. íd. Para cumplir con tan importante encomienda, se “hace imprescindible que el Secretario posea amplios poderes de investigación”. íd.
La Ley Núm. 120 de 31 de octubre de 1994, conocida como el Código de Rentas Internas de Puerto Rico de 1994, dispone en el inciso (a) de la See. 6121 (13 L.P.R.A. sec. 8121[a]), las facultades del Secretario de Hacienda. Espe-cíficamente, dispone:
*456 Sec. 8121. Examen de libros y de testigos
(a) Para determinar responsabilidad del contribuyente. — Con el fin de determinar la corrección de cualquier planilla o de-claración, o con el fin de preparar una planilla cuando nin-guna se hubiere rendido, el Secretario podrá, por conducto de cualquier funcionario o empleado del Departamento de Hacienda, examinar cualesquiera libros, papeles, constancias o memorandos pertinentes a las materias que deben incluirse en la planilla o declaración, y podrá requerir la comparecencia de la persona que rinde la planilla o declaración o la de cual-quier oficial o empleado de dicha persona, o la comparecencia de cualquier otra persona que tenga conocimiento tocante al asunto de que se trate, y tomarles declaración con respecto a las materias que por ley deban incluirse en dicha planilla o declaración, con facultad para tomar juramentos a dicha persona o personas.
En el Código de Rentas Internas no existe una defini-ción sobre lo que será, para propósitos de la ley, un funcio-nario o empleado público. Ante tal ausencia, señalamos a modo ilustrativo que el Art. 1.2(a) de la Ley de Etica Gu-bernamental, 3 L.P.R.A. sec. 1802(a), considera dentro de la categoría de “funcionario público” a “aquellas personas que ocupan cargos o empleos en el Gobierno del Estado Libre Asociado de Puerto Rico que están investidos de parte de la soberanía del Estado, por lo que intervienen en la formulación e implantación de la política pública”. Asi-mismo, esta ley define los “empleado [s] público [s]” como “aquellas personas que ocupan cargos o empleos en el Go-bierno del Estado Libre Asociado de Puerto Rico que no están investidos de parte de la soberanía del Estado y com-prende los empleados públicos regulares e irregulares, los que prestan servicios por contrato que equivalen a un puesto o cargo regular, los de nombramiento transitorio y los que se encuentran en periodo probatorio”. Art. 1.2(b) de la Ley de Ética Gubernamental, 3 L.P.R.A. sec. 1802(b).
De igual modo, la Ley de Protección de Empleados y Funcionarios, Querellantes o Testigos define los “funcionario [s] público [s]” como “aquellas personas que ocupan cargos o empleos en el Gobierno de Puerto Rico que *457 están investidos de parte de la soberanía del Estado” y a los “empleado [s] público [s]” como “aquellas personas que ocupan cargos o empleos en el Gobierno de Puerto Rico que no están investidos de parte de la soberanía del Estado y comprende los empleados públicos regulares e irregulares, los que prestan servicios por contrato que equivalen a un puesto o cargo regular, los de nombramiento transitorio y los que se encuentran en periodo probatorio”. Art. 4(a) y (b) de la Ley Núm. 426 de 7 de noviembre de 2000 (1 L.P.R.A. sec. 602(a) y (b)).
En Srio de Hacienda v. Tribl. Superior, 81 D.P.R. 666 (1960), tuvimos la oportunidad de analizar la entonces vi-gente Sec. 413(a) de la Ley de Contribuciones sobre Ingre-sos de 1954, que era prácticamente igual a la actual See. 6121 del Código de Rentas Internas de 1994, supra. Determinamos entonces que
[l]a facultad de investigación concedida por la see. 413 al Se-cretario de Hacienda es de naturaleza inquisitiva. Tal facultad es indispensable para que dicho funcionario pueda cumplir su obligación de cobrar las contribuciones sobre ingresos impues-tas por ley. Dicha sección, dado el fin público que persigue, debe ser interpretada liberalmente. Srio de Hacienda v. Tribl. Superior, supra, pág. 672.
Por otra parte, cuando el legislador aprueba una ley persigue “tratar de corregir un mal, alterar una situación existente, completar una reglamentación vigente, fomen-tar algún bien específico o el bienestar general, reconocer o proteger un derecho, crear una política pública o formular un plan de gobierno”. R.E. Bernier y J.A. Cuevas Segarra, Aprobación e interpretación de la leyes en Puerto Rico, 2da ed., San Juan, Pubs. JTS, 1987, Vol. 1, págs. 245-246. Antes del 2004 existía una “agria controversia sobre los con-tratos de Servicios Profesionales o Consultivos otorgados por el Gobierno del Estado Libre Asociado de Puerto Rico”. Exposición de Motivos de la Ley Núm. 237 de 31 de agosto de 2004, conocida como Ley para Establecer Parámetros Uniformes en los Procesos de Contratación de Servicios *458 Profesionales y Consultivos para las Agencias y Entidades Gubernamentales, 2004 (Parte 2) Leyes de Puerto Rico 1646. Aunque la Ley Núm. 237 no estaba vigente al mo-mento de ocurrir estos hechos, resume la práctica tradicio-nal de la contratación de servicios profesionales por las agencias de gobierno. Por ello, con el fin de “corregir ese mal”, se promulgó esa ley para regular la práctica de la contratación de servicios profesionales y consultivos luego de las recomendaciones hechas por el Contralor para que el proceso de seleccionar los servicios de terceros fuese justo con el contratado, con la entidad gubernamental contra-tante y, sobre todo, con el pueblo. Véase Exposición de Mo-tivos de la Ley Núm. 237, supra. Así se consolidaron “en un solo estatuto los requisitos de contratación de servicios profesionales o consultivos que otorgan las entidades gu-bernamentales por concepto de servicios profesionales o consultivos a individuos y entidades privadas”. Id., pág. 1647.
Así pues, la contratación de servicios profesionales o consultivos, según el Art. 2 de la mencionada ley, 3 L.P.R. A. see. 8612,
... se perfeccionará excepcionalmente y se utilizará única-mente cuando la entidad gubernamental no cuente o no pueda utilizar los recursos internos a ser contratados, o cuando el expertise destreza o experiencia del contratista sea necesario para la consecución de los fines para lo cual es contratado. En todo proceso de contratación que sea otorgado entre una enti-dad gubernamental y un contratista, se tomará en cuenta la necesidad real de los servicios a contratarse, la situación eco-nómica y el presupuesto de la entidad gubernamental contratante.
Los acusados y peticionarios aducen que la investiga-ción de sus planillas de contribución sobre ingresos fue ile-gal pues para ello se utilizaron los servicios de la CPA Már-quez Vázquez, quien no es empleada ni funcionaría del Departamento de Hacienda. Con el beneficio del marco conceptual anteriormente señalado, debemos resolver si *459 dentro del amplio poder de investigación que tiene el Se-cretario de Hacienda, este puede subcontratar para la in-vestigación de planillas de contribución sobre ingresos.
VIII
Como señalamos en Srio de Hacienda v. Tribl. Superior, supra, la Sec. 6121(a), supra, debe interpretarse liberal-mente para reconocer la amplitud de las funciones del Secretario. Al interpretarla liberalmente, concluimos que el Secretario de Hacienda puede contratar servicios profe-sionales y consultivos para que lo asistan en su función inquisitiva. Asimismo, cabe señalar que la mencionada sec-ción no prohíbe la subcontratación de terceros ajenos a la agencia para realizar las funciones de investigación. In-cluso, es costumbre que las agencias, departamentos y de-pendencias subcontraten los servicios profesionales y con-sultivos de entidades privadas para que los asistan en distintos asuntos. Consciente de ello, la Asamblea Legisla-tiva aprobó la Ley Núm. 237. No podemos perder de pers-pectiva que el Departamento de Hacienda tiene el ineludi-ble deber de velar por la sana administración de las leyes fiscales y mantener un sistema tributario en el que impere una carga contributiva justa. Para cumplir con ese deber, en ocasiones es necesaria la ayuda de profesionales exper-tos en materias delicadas.
Los acusados y peticionarios alegan que la Ley Núm. 41 de 9 de junio de 1956 (3 L.P.R.A. sec. 231a) autoriza al Secretario de Hacienda a delegar sus funciones única-mente a los funcionarios o empleados de su Departamento. No están en lo correcto. Dicha disposición de ley no prohíbe la contratación de servicios profesionales o consultivos para asistir al Secretario de Hacienda en sus funciones.
Por último, es norma reiterada en hermenéutica que las diversas “leyes sobre el mismo asunto o el mismo objetivo deben ser interpretadas conjuntamente, refiriéndose las *460 unas a las otras como un todo”. Bernier y Cuevas Segarra, op. cit, pág. 481. La regla “in pari materia preconiza que la Asamblea Legislativa, al aprobar una disposición de ley, ha tomado en consideración todos los demás estatutos sobre la materia, ya sean parte de la propia ley, ya sean indepen-dientes de ella”. íd. “Para interpretar correctamente una ley, debe buscarse la intención legislativa, no en una frase aislada o en una de sus secciones, sino en el contexto de todo el estatuto, teniendo en cuenta el propósito perse-guido por el legislador.” íd., pág. 484.
La intención de la Asamblea Legislativa fue otorgar po-deres amplios al Secretario de Hacienda para cumplir con su función inquisitiva. Una interpretación armoniosa del Código de Rentas Internas, de la Ley de Contabilidad del Gobierno y de la Ley Núm. 237 nos lleva a concluir que el Secretario de Hacienda cuenta con poderes amplios para delegar su función investigativa en empleados y funciona-rios, incluidos aquellos que desempeñan su labor por me-dio de un contrato de servicios profesionales o consultivos.
Incluso, si utilizamos a modo de ejemplo las definiciones ya citadas de “empleados” y “funcionarios” que aparecen en la Ley de Ética Gubernamental y en la Ley de Protección de Empleados y Funcionarios, Querellantes o Testigos, po-demos colegir que la CPA Márquez Vázquez está facultada para realizar estas funciones, ya que es una profesional que “presta servicios por contrato” al Departamento de Hacienda.
Por todo ello, concluimos al igual que los foros de inferior jerarquía, que no procede la supresión del testimonio de la CPA Márquez Vázquez.
IX
Por los fundamentos antes expuestos, procede que se confirme la resolución del Tribunal de Apelaciones y se de- *461 vuelva el caso al Tribunal de Primera Instancia para pro-cedimientos ulteriores.

 El Departamento de Hacienda solicitó la orden judicial para obtener toda la información bancaria relacionada con los contribuyentes, es decir: cuentas de ahorro, cuentas corrientes, certificados de ahorros y de depósitos, tarjetas de crédito, prés-tamos personales, hipotecarios o comerciales, cajas de seguridad, contratos de arren-damiento de vehículos, cuentas de securities broker y cualquier otra información relacionada.

 El Ministerio Público acusó a los peticionarios por cuatro infracciones a la See. 6050 del Código de Rentas Internas de Puerto Rico (evasión contributiva), 13 L.P.R.A. sec. 8055, y por cuatro cargos por violación del Art. 6054(b)(1) del Código de Rentas Internas de Puerto Rico (perjurio al firmar planillas), 13 L.P.R.A. see. 8059. Se alega que los acusados evadieron su responsabilidad contributiva y sometieron planillas de contribución sobre ingresos con información falsa de 1999 a 2002. Se alega que ambos acusados y peticionarios dejaron de reportar ingresos ascendentes a $1,904,802 y evadieron el pago de $581,219 en impuestos.

 Como puede apreciarse, estamos relatando el trato dado a este asunto por varios tribunales federales de todos los niveles. No estamos refiriéndonos en ese relato a la Constitución de Puerto Rico ni estamos citando decisiones de tribunales federales de jerarquía inferior como precedentes en nuestra jurisdicción.

 El tribunal reconoció legitimación activa al acusado ya que conforme a lo resuelto en Jones v. United States, 362 U.S. 257 (1960), no se le podía negar. En Jones, el Tribunal Supremo de Estados Unidos sostuvo que era suficiente estar le-galmente en el lugar registrado o allanado para tener legitimación activa para soli-citar la supresión de evidencia. Esta postura fue posteriormente abandonada en United States v. Salvucci, 448 U.S. 83 (1980). En Salvucci, el Tribunal Supremo sostuvo que el Estado puede impugnar la legitimación activa del acusado, pues éste puede acreditar su expectativa legítima de intimidad en la vista de supresión de evidencia sin que sea admisible en el juicio lo que pudiera surgir en su contra en esa vista. Chiesa Aponte, op. cit, págs. 115-116.

 Véanse, además: Lagow v. U.S., 159 F.2d 245 (2do Cir. 1946) (El Tribunal Federal de Apelaciones para el Segundo Circuito razonó que cuando una persona escoge tomar el privilegio de hacer negocios como una corporación, aun cuando sea su único accionista, éste no puede invocar vicariamente el privilegio de la corpora-ción al amparo de la Cuarta Enmienda); U.S. v. Carrol, 144 F.Supp. 939 (D. N.Y. 1956) (El Tribunal de Distrito Federal de Nueva York expresó que un oficial de una corporación no es la parte adecuada para invocar cualquier derecho de la corporación en contra de un registro o allanamiento ilegal, aunque sea su único oficial corporativo o accionista principal). Cf. U.S. v. Morton Provision Co., 294 F.Supp. 385 (D. Del. 1968) (Se le reconoció legitimación activa a los oficiales de una corporación para solicitar la supresión de evidencia obtenida de la cuentas corporativas, ya que estos pudieron demostrar que tenían una legítima expectativa de intimidad), y S. Plotkin Paul, Dawn Raids Here at Home? The Danger of Vanishing Privacy Expectations for Corporate Employees, 17 St. Thomas L. Rev. 265, 278-279 (2004) (“[Clases finding in favor of employee standing seem to be largely limited to those circumstances where the defendant has either exclusive use of an area or a significant proprietary interest at stake. ... The Court in ... United States v. Morton Provision Co.[, 294 F.Supp. 385 (D. Del. 1968),] pointed to similar proprietary factors in ultimately deciding to rule in favor of standing in those cases”).

 Aducen los peticionarios que como sus corporaciones son íntimas y ellos son sus únicos accionistas, poseen legitimación activa para solicitar la supresión de la evidencia obtenida de las cuentas bancarias de las corporaciones. Sin embargo, el Tribunal de Primera Instancia señaló que la supuesta naturaleza íntima de las cor-poraciones no se planteó oportunamente ni se presentó evidencia al respecto. Ade-más, señaló el foro primario que los certificados de incorporación no cumplían con lo exigido por el Art. 14.04 de la Ley de Corporaciones de 1995 (14 L.P.R.A. sec. 3204). De igual forma, el foro intermedio concluyó que, luego de evaluar los tres certificados de incorporación sometidos por los peticionarios, no se deduce que estos cumplen con los requisitos de la Ley de Corporaciones de 1995 referente a las corporaciones íntimas. Véase Resolución del Tribunal de Apelaciones de 29 de octubre de 2007, pág. 13, en el Apéndice de la Petición de certiorari, pág. 15. Como correctamente señaló el Tribunal de Apelaciones, aun cuando los peticionarios hubiesen probado que las cor-poraciones eran íntimas o familiares, la doctrina es clara en establecer que la corpo-ración íntima comparte con la corporación regular la personalidad jurídica propia. Al ser esto así, es la corporación la que ostenta la legitimación para poder solicitar la supresión de la evidencia que se obtenga de sus cuentascorporativas.