(Slip Opinion) OCTOBER TERM, 2010 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## FEDERAL COMMUNICATIONS COMMISSION ET AL. *v.* AT&T INC. ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 09–1279.   Argued January 19, 2011—Decided March 1, 2011

The Freedom of Information Act requires federal agencies to make records and documents publicly available upon request, subject to several statutory exemptions. One of those exemptions, Exemption 7(C), covers law enforcement records the disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U. S. C. §552(b)(7)(C). CompTel, a trade association, submitted a FOIA request for documents AT&T had provided to the Federal Communications Commission Enforcement Bureau during an investigation of that company. The Bureau found that Exemption 7(C) applied to individuals identified in AT&T's submissions but not to the company itself, concluding that corporations do not have "personal privacy" interests as required by the exemption. The FCC agreed with the Bureau, but the Court of Appeals for the Third Circuit did not. It held that Exemption 7(C) extends to the "personal privacy" of corporations, reasoning that "personal" is the adjective form of the term "person," which Congress has defined, as applicable here, to include corporations, §551(2).

*Held:* Corporations do not have "personal privacy" for the purposes of Exemption 7(C). Pp. 3–12.

   (a) AT&T argues that the word "personal" in Exemption 7(C) incorporates the statutory definition of "person," which includes corporations, §551(2). But adjectives do not always reflect the meaning of corresponding nouns. "Person" is a defined term in the statute; "personal" is not. When a statute does not define a term, the Court typically "give[s] the phrase its ordinary meaning." *Johnson* v. *United States*, 559 U. S. ___, ___. "Personal" ordinarily refers to individuals. People do not generally use terms such as personal characteristics or

personal correspondence to describe the characteristics or correspondence of corporations. In fact, "personal" is often used to mean precisely the *opposite* of business-related: We speak of personal expenses and business expenses, personal life and work life, personal opinion and a company's view. Dictionary definitions also suggest that "personal" does not ordinarily relate to artificial "persons" like corporations.

AT&T contends that its reading of "personal" is supported by the common legal usage of the word "person." Yet while "person," in a legal setting, often refers to artificial entities, AT&T's effort to ascribe a corresponding legal meaning to "personal" again elides the difference between "person" and "personal." AT&T provides scant support for the proposition that "personal" denotes corporations, even in a legal context.

Regardless of whether "personal" can carry a legal meaning apart from its ordinary one, statutory language should be construed "in light of the terms surrounding it." *Leocal* v. *Ashcroft*, 543 U. S. 1, 9. Exemption 7(C) refers not just to the word "personal," but to the term "personal privacy." "Personal" in that phrase conveys more than just "of a person"; it suggests a type of privacy evocative of human concerns—not the sort usually associated with an entity like AT&T. AT&T does not cite any other instance in which a court has expressly referred to a corporation's "personal privacy." Nor does it identify any other statute that does so. While AT&T argues that this Court has recognized "privacy" interests of corporations in the Fourth Amendment and double jeopardy contexts, this case does not call for the Court to pass on the scope of a corporation's "privacy" interests as a matter of constitutional or common law. AT&T contends that the FCC has not demonstrated that the phrase "personal privacy" necessarily excludes corporations' privacy. But construing statutory language is not merely an exercise in ascertaining "the outer limits of [a word's] definitional possibilities," *Dolan* v. *Postal Service*, 546 U. S. 481, 486, and AT&T has provided no sound reason in the statutory text or context to disregard the ordinary meaning of the phrase. Pp. 3–9.

(b) The meaning of "personal privacy" in Exemption 7(C) is further clarified by two pre-existing FOIA exemptions. Exemption 6, which Congress enacted eight years before Exemption 7(C), covers "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." §552(b)(6). This Court has regularly referred to Exemption 6 as involving an "individual's right of privacy," *Department of State* v. *Ray*, 502 U. S. 164, 175, and Congress used in Exemption 7(C) the same phrase—"personal privacy"—used in Exemption 6. In contrast, FOIA

Syllabus

Exemption 4, which protects "trade secrets and commercial or financial information obtained from a person and privileged or confidential," §552(b)(4), clearly applies to corporations.  Congress did not use any language similar to that in Exemption 4 in Exemption 7(C).  Pp. 9–11.

582 F. 3d 490, reversed.

ROBERTS, C. J., delivered the opinion of the Court, in which all other Members joined, except KAGAN, J., who took no part in the consideration or decision of the case.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 09–1279

FEDERAL COMMUNICATIONS COMMISSION, ET AL., PETITIONERS *v.* AT&T INC. ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

[March 1, 2011]

CHIEF JUSTICE ROBERTS delivered the opinion of the Court.

The Freedom of Information Act requires federal agencies to make records and documents publicly available upon request, unless they fall within one of several statutory exemptions. One of those exemptions covers law enforcement records, the disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U. S. C. §552(b)(7)(C). The question presented is whether corporations have "personal privacy" for the purposes of this exemption.

I

The Freedom of Information Act request at issue in this case relates to an investigation of respondent AT&T Inc., conducted by the Federal Communications Commission. AT&T participated in an FCC-administered program—the E-Rate (or Education-Rate) program—that was created to enhance access for schools and libraries to advanced telecommunications and information services. In August 2004, AT&T voluntarily reported to the FCC that it might

have overcharged the Government for services it provided as part of the program.

The FCC's Enforcement Bureau launched an investigation. As part of that investigation, AT&T provided the Bureau various documents, including responses to interrogatories, invoices, emails with pricing and billing information, names and job descriptions of employees involved, and AT&T's assessment of whether those employees had violated the company's code of conduct. 582 F. 3d 490, 492–493 (CA3 2009). The FCC and AT&T resolved the matter in December 2004 through a consent decree in which AT&T—without conceding liability—agreed to pay the Government $500,000 and to institute a plan to ensure compliance with the program. See 19 FCC Rcd. 24014, 24016–24019.

Several months later, CompTel—"a trade association representing some of AT&T's competitors"—submitted a FOIA request seeking "'[a]ll pleadings and correspondence'" in the Bureau's file on the AT&T investigation. 582 F. 3d, at 493. AT&T opposed CompTel's request, and the Bureau issued a letter-ruling in response.

The Bureau concluded that some of the information AT&T had provided (including cost and pricing data, billing-related information, and identifying information about staff, contractors, and customer representatives) should be protected from disclosure under FOIA Exemption 4, which relates to "trade secrets and commercial or financial information," 5 U. S. C. §552(b)(4). App. to Pet. for Cert. 40a–41a. The Bureau also decided to withhold other information under FOIA Exemption 7(C). Exemption 7(C) exempts "records or information compiled for law enforcement purposes" that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." §552(b)(7)(C). The Bureau concluded that "individuals identified in [AT&T's] submissions" have "privacy rights" that warrant protection under Exemption 7(C).

*Id.*, at 43a. The Bureau did not, however, apply that exemption to the corporation itself, reasoning that "businesses do not possess 'personal privacy' interests as required" by the exemption. *Id.,* at 42a–43a.

On review the FCC agreed with the Bureau. The Commission found AT&T's position that it is "a 'private corporate citizen' with personal privacy rights that should be protected from disclosure that would 'embarrass' it . . . within the meaning of Exemption 7(C) . . . at odds with established [FCC] and judicial precedent." 23 FCC Rcd. 13704, 13707 (2008). It therefore concluded that "Exemption 7(C) has no applicability to corporations such as [AT&T]." *Id.,* at 13710.

AT&T sought review in the Court of Appeals for the Third Circuit, and that court rejected the FCC's reasoning. Noting that Congress had defined the word "person" to include corporations as well as individuals, 5 U. S. C. §551(2), the court held that Exemption 7(C) extends to the "personal privacy" of corporations, since "the root from which the statutory word [personal] . . . is derived" is the defined term "person." 582 F. 3d, at 497. As the court explained, "[i]t would be very odd indeed for an adjectival form of a defined term not to refer back to that defined term." *Ibid.* The court accordingly ruled "that FOIA's text unambiguously indicates that a corporation may have a 'personal privacy' interest within the meaning of Exemption 7(C)." *Id.,* at 498.

The FCC petitioned this Court for review of the Third Circuit's decision and CompTel filed as a respondent supporting petitioners. We granted certiorari, 561 U. S. ___ (2010), and now reverse.

II

Like the Court of Appeals below, AT&T relies on the argument that the word "personal" in Exemption 7(C) incorporates the statutory definition of the word "person."

See Brief for Respondent AT&T 8–9, 14–15 (AT&T Brief); 582 F. 3d, at 497. The Administrative Procedure Act defines "person" to include "an individual, partnership, corporation, association, or public or private organization other than an agency." 5 U. S. C. §551(2). Because that definition applies here, the argument goes, "personal" must mean relating to those "person[s]": namely, corporations and other entities as well as individuals. This reading, we are told, is dictated by a "basic principle of grammar and usage." AT&T Brief 8; see *id.,* at 14–15; see also 582 F. 3d, at 497 (citing *Delaware River Stevedores* v. *DiFidelto*, 440 F. 3d 615, 623 (CA3 2006) (Fisher, J., concurring), for "[t]he grammatical imperativ[e]" that "a statute which defines a noun has thereby defined the adjectival form of that noun"). According to AT&T, "[b]y expressly defining the noun 'person' to include corporations, Congress *necessarily* defined the adjective form of that noun—'personal'—also to include corporations." AT&T Brief 14 (emphasis added).

We disagree. Adjectives typically reflect the meaning of corresponding nouns, but not always. Sometimes they acquire distinct meanings of their own. The noun "crab" refers variously to a crustacean and a type of apple, while the related adjective "crabbed" can refer to handwriting that is "difficult to read," Webster's Third New International Dictionary 527 (2002); "corny" can mean "using familiar and stereotyped formulas believed to appeal to the unsophisticated," *id.,* at 509, which has little to do with "corn," *id.,* at 507 ("the seeds of any of the cereal grasses used for food"); and while "crank" is "a part of an axis bent at right angles," "cranky" can mean "given to fretful fussiness," *id.,* at 530.

Even in cases such as these there may well be a link between the noun and the adjective. "Cranky" describes a person with a "wayward" or "capricious" temper, see 3 Oxford English Dictionary 1117 (2d ed. 1989) (OED),

which might bear some relation to the distorted or crooked angular shape from which a "crank" takes its name. That is not the point. What is significant is that, in ordinary usage, a noun and its adjective form may have meanings as disparate as any two unrelated words. The FCC's argument that "personal" does not, in fact, derive from the English word "person," but instead developed along its own etymological path, Reply Brief for Petitioners 6, simply highlights the shortcomings of AT&T's proposed rule.

"Person" is a defined term in the statute; "personal" is not. When a statute does not define a term, we typically "give the phrase its ordinary meaning." *Johnson* v. *United States*, 559 U. S. \_\_\_, \_\_\_ (2010) (slip op., at 4). "Personal" ordinarily refers to individuals. We do not usually speak of personal characteristics, personal effects, personal correspondence, personal influence, or personal tragedy as referring to corporations or other artificial entities. This is not to say that corporations do not have correspondence, influence, or tragedies of their own, only that we do not use the word "personal" to describe them.

Certainly, if the chief executive officer of a corporation approached the chief financial officer and said, "I have something personal to tell you," we would not assume the CEO was about to discuss company business. Responding to a request for information, an individual might say, "that's personal." A company spokesman, when asked for information about the company, would not. In fact, we often use the word "personal" to mean precisely the *opposite* of business-related: We speak of personal expenses and business expenses, personal life and work life, personal opinion and a company's view.

Dictionaries also suggest that "personal" does not ordinarily relate to artificial "persons" such as corporations. See, *e.g.,* 7 OED 726 (1933) ("[1] [o]f, pertaining to . . . the individual person or self," "individual; private; one's own," "[3] [o]f or pertaining to one's person, body, or figure," "[5]

[o]f, pertaining to, or characteristic of a person or self-conscious being, as opposed to a thing or abstraction"); 11 OED at 599–600 (2d ed. 1989) (same); Webster's Third New International Dictionary 1686 (1976) ("[3] relating to the person or body"; "[4] relating to an individual, his character, conduct, motives, or private affairs"; "[5] relating to or characteristic of human beings as distinct from things"); *ibid.* (2002) (same).

AT&T dismisses these definitions, correctly noting that "personal"—at its most basic level—simply means "[o]f or pertaining to a particular person." Webster's New International Dictionary 1828 (2d ed. 1954). The company acknowledges that "in non-legal usage, where a 'person' is a human being, it is entirely unsurprising that the word 'personal' is used to refer to human beings." AT&T Brief 8. But in a watered-down version of the "grammatical imperative" argument, AT&T contends that "person"—in common *legal* usage—is understood to include a corporation. "Personal" in the same context therefore can and should have the same scope, especially here in light of the statutory definition. See *id.*, at 8–9, 16.

The construction of statutory language often turns on context, see, *e.g., Johnson, supra,* at ___ (slip op., at 5), which certainly may include the definitions of related words. But here the context to which AT&T points does not dissuade us from the ordinary meaning of "personal." We have no doubt that "person," in a legal setting, often refers to artificial entities. The Dictionary Act makes that clear. 1 U. S. C. §1 (defining "person" to include "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals"). But AT&T's effort to ascribe a corresponding legal meaning to "personal" again elides the difference between "person" and "personal."

When it comes to the word "personal," there is little support for the notion that it denotes corporations, even in

the legal context. AT&T notes that corporations are "protected by the doctrine of 'personal' jurisdiction," AT&T Brief 19, but that phrase refers to jurisdiction *in personam*, as opposed to *in rem*, not the jurisdiction "of a person." The only other example AT&T cites is an 1896 case that referred to the "'personal privilege'" of a corporation. *Ibid.* (quoting *Mercantile Bank* v. *Tennessee ex rel. Memphis*, 161 U. S. 161, 171 (1896) (emphasis deleted)). These examples fall far short of establishing that "personal" here has a legal meaning apart from its ordinary one, even if "person" does. Cf. *Merck & Co.* v. *Reynolds*, 559 U. S. ___, ___–___ (2010) (slip op., at 8–10) (noting that "'discovery' is often used as a term of art in connection with the 'discovery rule'" and describing the judicial and legislative codification of that meaning over time); *Molzof* v. *United States*, 502 U. S. 301, 306 (1992) ("'Punitive damages' is a legal term of art that has a widely accepted common-law meaning . . . this Court's decisions make clear that the concept . . . has a long pedigree in the law").

Regardless of whether "personal" can carry a special meaning in legal usage, "when interpreting a statute . . . we construe language . . . in light of the terms surrounding it." *Leocal* v. *Ashcroft*, 543 U. S. 1, 9 (2004). Exemption 7(C) refers not just to the word "personal," but to the term "personal privacy." §552(b)(7)(C); cf. *Textron Lycoming Reciprocating Engine Div., AVCO Corp.* v. *Automobile Workers*, 523 U. S. 653, 657 (1998) ("It is not the meaning of 'for' we are seeking here, but the meaning of '[s]uits for violation of contracts'"). AT&T's effort to attribute a special legal meaning to the word "personal" in this particular context is wholly unpersuasive.

AT&T's argument treats the term "personal privacy" as simply the sum of its two words: the privacy of a person. Under that view, the defined meaning of the noun "person," or the asserted specialized legal meaning, takes on

greater significance. But two words together may assume a more particular meaning than those words in isolation. We understand a golden cup to be a cup made of or resembling gold. A golden boy, on the other hand, is one who is charming, lucky, and talented. A golden opportunity is one not to be missed. "Personal" in the phrase "personal privacy" conveys more than just "of a person." It suggests a type of privacy evocative of human concerns—not the sort usually associated with an entity like, say, AT&T.

Despite its contention that "[c]ommon legal usage" of the word "person" supports its reading of the term "personal privacy," AT&T Brief 9, 13, 18, AT&T does not cite a single instance in which this Court or any other (aside from the Court of Appeals below) has expressly referred to a corporation's "personal privacy." Nor does it identify any other statute that does so. See Tr. of Oral Arg. 26. On the contrary, treatises in print around the time that Congress drafted the exemptions at hand reflect the understanding that the specific concept of "personal privacy," at least as a matter of common law, did not apply to corporations. See Restatement (Second) of Torts §652I, Comment *c* (1976) ("A corporation, partnership or unincorporated association has no personal right of privacy"); W. Prosser, Law of Torts §97, pp. 641–642 (2d ed. 1955) ("A corporation or a partnership as such can have no personal privacy, although it seems clear that it may have an exclusive right to its name and its business prestige" (footnotes omitted)); cf. *id.*, §112, at 843–844 (3d ed. 1964) ("It seems to be generally agreed that the right of privacy is one pertaining only to individuals, and that a corporation or a partnership cannot claim it as such" (footnotes omitted)); *id.*, §117, at 815 (4th ed. 1971) (same).

AT&T contends that this Court has recognized "privacy" interests of corporations in the Fourth Amendment and double jeopardy contexts, and that the term should be similarly construed here. See AT&T Brief 20–25. But this

case does not call upon us to pass on the scope of a corporation's "privacy" interests as a matter of constitutional or common law. The discrete question before us is instead whether Congress used the term "personal privacy" to refer to the privacy of artificial persons in FOIA Exemption 7(C); the cases AT&T cites are too far afield to be of help here.

AT&T concludes that the FCC has simply failed to demonstrate that the phrase "personal privacy" "necessarily *excludes* the privacy of corporations." *Id.,* at 31–32 (emphasis added). But construing statutory language is not merely an exercise in ascertaining "the outer limits of [a word's] definitional possibilities," *Dolan* v. *Postal Service*, 546 U. S. 481, 486 (2006). AT&T has given us no sound reason in the statutory text or context to disregard the ordinary meaning of the phrase "personal privacy."

## III

The meaning of "personal privacy" in Exemption 7(C) is further clarified by the rest of the statute. Congress enacted Exemption 7(C) against the backdrop of pre-existing FOIA exemptions, and the purpose and scope of Exemption 7(C) becomes even more apparent when viewed in this context. See *Nken* v. *Holder*, 556 U. S. \_\_\_, \_\_\_ (2009) (slip op., at 6) ("statutory interpretation turns on 'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole'" (quoting *Robinson* v. *Shell Oil Co.*, 519 U. S. 337, 341 (1997))). Two of those other exemptions are particularly relevant here.

The phrase "personal privacy" first appeared in the FOIA exemptions in Exemption 6, enacted in 1966, eight years before Congress enacted Exemption 7(C). See 80 Stat. 250, codified as amended at 5 U. S. C. §552(b)(6). Exemption 6 covers "personnel and medical files and similar files the disclosure of which would constitute

a clearly unwarranted invasion of personal privacy."
§552(b)(6). Not only did Congress choose the same term in
drafting Exemption 7(C), it also used the term in a nearly
identical manner.

Although the question whether Exemption 6 is limited
to individuals has not come to us directly, we have regu-
larly referred to that exemption as involving an "individ-
ual's right of privacy." *Department of State* v. *Ray*, 502
U. S. 164, 175 (1991) (quoting *Department of Air Force* v.
*Rose*, 425 U. S. 352, 372 (1976) (internal quotation marks
omitted)); see also *Department of State* v. *Washington Post
Co.*, 456 U. S. 595, 599 (1982).

AT&T does not dispute that "identical words and
phrases within the same statute should normally be given
the same meaning," *Powerex Corp.* v. *Reliant Energy
Services, Inc.*, 551 U. S. 224, 232 (2007), but contends that
"if Exemption 6 does not protect corporations, it is because
[it] applies only to 'personnel and medical files and similar
files,'" not because of the term "personal privacy." AT&T
Brief 36 (quoting §552(b)(6)). Yet the significance of the
pertinent phrase—"the disclosure of which would consti-
tute a clearly unwarranted invasion of personal privacy,"
§552(b)(6)—cannot be so readily dismissed. Without it,
Exemption 6 would categorically exempt "personnel and
medical files" as well as any "similar" file. Even if the
scope of Exemption 6 is also limited by the types of files it
protects, the "personal privacy" phrase importantly de-
fines the particular subset of that information Congress
sought to exempt. See *Washington Post Co.*, *supra,* at 599.
And because Congress used the same phrase in Exemption
7(C), the reach of that phrase in Exemption 6 is pertinent
in construing Exemption 7(C).

In drafting Exemption 7(C), Congress did not, on the
other hand, use language similar to that in Exemption 4.
Exemption 4 pertains to "trade secrets and commercial or
financial information obtained from a person and privi-

leged or confidential." 5 U. S. C. §552(b)(4). This clearly applies to corporations—it uses the defined term "person" to describe the source of the information—and we far more readily think of corporations as having "privileged or confidential" documents than personally private ones. So at the time Congress enacted Exemption 7(C), it had in place an exemption that plainly covered a corporation's commercial and financial information, and another that we have described as relating to "individuals." The language of Exemption 7(C) tracks the latter.

The Government has long interpreted the phrase "personal privacy" in Exemption 7(C) accordingly. Shortly after Congress passed the 1974 amendments that enacted Exemption 7(C), the Attorney General issued a memorandum to executive departments and agencies explaining that "personal privacy" in that exemption "pertains to the privacy interests of individuals." U. S. Dept. of Justice, Attorney General's Memorandum on the 1974 Amendments to the Freedom of Information Act 9, reprinted in House Committee on Government Operations and Senate Committee on the Judiciary, Freedom of Information Act and Amendments of 1974 (P. L. 93–502), 94th Cong., 1st Sess., 507, 579 (Jt. Comm. Print 1975). The exemption, the Attorney General noted, "does not seem applicable to corporations or other entities." *Ibid.* We have previously viewed this Memorandum as a reliable guide in interpreting FOIA, see *National Archives and Records Admin.* v. *Favish*, 541 U. S. 157, 169 (2004); *FBI* v. *Abramson*, 456 U. S. 615, 622, n. 5 (1982), and we agree with its conclusion here.

\*    \*    \*

We reject the argument that because "person" is defined for purposes of FOIA to include a corporation, the phrase "personal privacy" in Exemption 7(C) reaches corporations as well. The protection in FOIA against disclosure of law

enforcement information on the ground that it would constitute an unwarranted invasion of personal privacy does not extend to corporations. We trust that AT&T will not take it personally.

The judgment of the Court of Appeals is reversed.

*It is so ordered.*

JUSTICE KAGAN took no part in the consideration or decision of this case.