■ SPORTSFIELD SPECIALTIES, INC., Appellant, v TWIN CITY FIRE INSURANCE COMPANY et al., Respondents. [984 NYS2d 447]—

---

* The penalty was later reduced upon discretionary review.

Egan Jr., J. Appeal from an order of the Supreme Court (Becker, J.), entered November 7, 2012 in Delaware County, which, among other things, granted defendants' cross motions for summary judgment dismissing the complaint.

In fall 2009, plaintiff, a sports equipment company located in the Town of Delhi, Delaware County, hired a competitor's employee. The employee in question was subject to a noncompete agreement and an electronic rights agreement, which imposed various restrictions upon, among other things, his use/dissemination of the competitor's proprietary information. In November 2009, the competitor, a North Carolina corporation, commenced an action in that state alleging—as to plaintiff—tortious interference with contract and business relations, unfair and deceptive trade practices and misappropriation of trade secrets.

At all times relevant, plaintiff was covered under two policies of insurance—a general liability policy issued by defendant Twin City Fire Insurance Company and a commercial umbrella policy issued by defendant CastlePoint Insurance Company.[1] Shortly after receiving the underlying complaint, plaintiff notified Harding Brooks Associates LLC (through which it had obtained the subject policies) and that entity, in turn, filed a notice of occurrence/claim with Twin City.[2] In February 2010, Twin City declined to defend and/or indemnify plaintiff in the underlying action.

The North Carolina action proceeded to trial and, in July 2011, the jury returned a verdict in favor of plaintiff's competitor. One month later, counsel for plaintiff contacted Twin City and CastlePoint requesting that they defend and indemnify plaintiff with respect to the underlying judgment (ultimately calculated to be in excess of $3.2 million). According to CastlePoint, the August 2011 letter from counsel—received almost two years after the underlying action was commenced and after a judgment against its insured had been entered—was the first notice it received of plaintiff's request for defense and/or indemnification. Both Twin City and CastlePoint denied coverage under the respective policies.

---

**1.** The CastlePoint policy was divided into coverage A and coverage B. Coverage A, which incorporated all of the terms, definitions, conditions and exclusions set forth in the Twin City policy, did not apply unless coverage existed under the Twin City policy or would exist but for the exhaustion of the primary policy's limits. Coverage B provided umbrella coverage for losses in excess of the retained limit that were not insured under coverage A.

**2.** No corresponding notice apparently was provided to CastlePoint.

Thereafter, in November 2011, plaintiff commenced this action against defendants seeking, among other things, a declaration that defendants had a duty to defend and indemnify it with respect to the North Carolina action and resulting judgment. Following joinder of issue, plaintiff moved for summary judgment, and defendants cross-moved for summary judgment dismissing the complaint. Supreme Court denied plaintiff's motion and granted the respective cross motions, declaring that defendants had no duty to defend or indemnify plaintiff in the underlying action. This appeal by plaintiff ensued.

We affirm. An insurer's duty to defend, which is broader than its duty to indemnify, arises "whenever the allegations within the four corners of the underlying complaint potentially give rise to a covered claim, or where the insurer has actual knowledge of facts establishing a reasonable possibility of coverage" (*Lombardi, Walsh, Wakeman, Harrison, Amodeo & Davenport, P.C. v American Guar. & Liab. Ins. Co.*, 85 AD3d 1291, 1293 [2011] [internal quotation marks and citations omitted]; *see State Farm Fire & Cas. Co. v Joseph M.*, 106 AD3d 806, 807 [2013]). That said, "[t]he nature of [the] claims asserted in [the] complaint is to be determined based upon the facts alleged and not the conclusions which the pleader draws therefrom or upon the characterization applied to a claim by a party" (*J. Lucarelli & Sons, Inc. v Mountain Val. Indem. Co.*, 64 AD3d 856, 858 [2009] [internal quotation marks and citations omitted]). Here, the complaint in the North Carolina action alleged that plaintiff engaged in tortious interference with contract and business relations, unfair and deceptive trade practices and the misappropriation of trade secrets, prompting plaintiff to seek coverage under the "personal and advertising injury" portions of the subject policies.

The policy issued by Twin City defined "personal and advertising injury" as an injury, other than a bodily injury, arising out of both the insured's business and one or more of the enumerated offenses set forth therein, including the "[o]ral or written publication of material that violates a person's right of privacy." CastlePoint adopted the same definitions employed in the Twin City policy with respect to losses encompassed by coverage A and, insofar as is relevant here, also defined "advertising injury" under coverage B of the policy as the "[o]ral or written publication of material that violates a person's right of privacy." The crux of plaintiff's argument—both before Supreme Court and on appeal—is that the term "person" connotes both individuals and corporations and, further, that the misdeeds alleged in the underlying complaint broadly implicate its competitor's "right of privacy."

Contrary to plaintiff's assertion, the issue is not whether—either in the abstract or as a general proposition—the term "person" can be construed to encompass both an individual and a corporation. As plaintiff points out, there indeed are instances in which the term "person" is so broadly defined (*see e.g.* 1 USC § 1; General Business Law § 511 [2]; General Construction Law § 37; Insurance Law § 2101 [p], [q]; Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/ person), and we are well aware that when a particular term—here, person—is not defined in an insurance policy, we are to accord the term its commonly understood meaning (*see Platek v Town of Hamburg*, 97 AD3d 1118, 1120 [2012], *appeal dismissed* 20 NY3d 916 [2012]; *Morey v Security Mut. Ins. Co.*, 245 AD2d 852, 854 [1997]). The issue we initially must resolve, however, is whether—when read in the context of the underlying insurance policies—the term "person" can reasonably be construed to include a corporate entity.

To our analysis, Twin City's policy does not permit such a construction. As Supreme Court aptly observed, the offense at issue—the "[o]ral or written publication of material that violates a person's right of privacy"—is sandwiched between two other offenses in Twin City's policy that make express reference to misdeeds perpetrated against either a person *or* an organization,[3] thereby suggesting that the omission of any reference to an organization from the subject offense was intentional (*cf. 47 Mamaroneck Ave. Corp. v Hartford Fire Ins. Co.*, 50 AD3d 952, 954 [2008]; *see generally Heritage Mut. Ins. Co. v Advanced Polymer Tech., Inc.*, 97 F Supp 2d 913, 934 [SD Ind 2000]). Although the parties debate whether CastlePoint's policy draws as clear a distinction between the terms at issue, this issue need not detain us because plaintiff's actions—tortious interference with contract and business relations, unfair and deceptive trade practices and misappropriation of trade secrets—do not constitute a violation of "a person's right of privacy" within the meaning of either Twin City's or CastlePoint's policy.

To be sure, the complaint in the underlying action alleged conduct on the part of plaintiff that extended beyond the misappropriation of trade secrets and, in general, encompassed the acquisition and/or use of confidential and proprietary information belonging to its competitor. However, equating those allega-

---

**3.** The offense preceding the right of privacy provision refers to the "[o]ral or written publication of material that slanders or libels a person or disparages a person's or organization's goods, products or services," and the offense following the right of privacy provision references the copying of "a person's or organization's 'advertising idea' or style of 'advertisement.' "

tions with an invasion of the competitor's "right of privacy" ignores both the competitor's status as a corporate entity (*see Clark Mfg. Inc. v Northfield Ins. Co.*, 187 F3d 646, 1999 WL 451103, *4, 1999 US App LEXIS 14133, 10 [9th Cir 1999]; *Golden Archer Inv., LLC v Skynet Fin. Sys., LLC*, 2013 WL 656799, *1, 2013 US Dist LEXIS 35690, *4 [SD NY 2013]; *Hobbs Group, Inc. v Baldwin*, 1997 WL 430645, *1, 1997 Conn Super LEXIS 1956, *2 [1997]; Restatement [Second] of Torts § 6521, Comment c; *cf. FCC v AT&T Inc.*, 562 US —, — - —, 131 S Ct 1177, 1183-1184 [2011]) and the historically personal nature of privacy rights in general (*see FCC v AT&T Inc.*, 562 US at — - —, 131 S Ct at 1183-1184; *Heritage Mut. Ins. Co. v Advanced Polymer Tech., Inc.*, 97 F Supp 2d at 934 n 13; *Association for Preserv. of Freedom of Choice v Nation Co.*, 35 Misc 2d 42, 45 [1962]; 1 Rights of Publicity and Privacy § 4:43 [2d ed 2013]). Accordingly, for all of these reasons, Supreme Court properly concluded that the acts for which plaintiff sought defense and indemnification did not fall within the scope of the subject policies.

Moreover, it is well settled that "[a]n insurer need not provide a defense . . . when it demonstrates that the complaint's allegations cast that pleading solely and entirely within the policy exclusions, and further, that . . . the allegations, *in toto*, are subject to no other interpretation" (*J. Lucarelli & Sons, Inc. v Mountain Val. Indem. Co.*, 64 AD3d at 858 [internal quotation marks and citations omitted]; *see Automobile Ins. Co. of Hartford v Cook*, 7 NY3d 131, 137 [2006]). Here, Twin City relies upon three exclusions relative to the personal and advertising injury coverage otherwise afforded by its policy—the intentional conduct exclusion, the breach of contract exclusion and the trademark exclusion.[4] In the context of an insurance policy, "the phrase arising out of is ordinarily understood to mean originating from, incident to, or having connection with . . . [and] requires only that there be some causal relationship between the injury and the risk for which coverage is provided or excluded" (*Natural Organics, Inc. v OneBeacon Am. Ins. Co.*, 102 AD3d 756, 759 [2013], *lv dismissed* 22 NY3d 989 [2013]

---

4. Twin City's policy does not apply to personal and advertising injury (1) "[a]rising out of an 'offense' committed by, at the direction or with the consent or acquiescence of the insured with the expectation of inflicting 'personal and advertising injury' " (the intentional conduct exclusion), (2) "[a]rising out of any breach of contract, except an implied contract to use another's 'advertising idea' in your 'advertisement' " (the breach of contract exclusion), and (3) "[a]rising out of the infringement of patent, trademark, trade name, service mark or other designation of origin or authenticity" (the trademark exclusion).

[internal quotation marks and citations omitted]; *see Maroney v New York Cent. Mut. Fire Ins. Co.*, 5 NY3d 467, 472 [2005]). Without belaboring the point, suffice it to say that our review of the underlying complaint leads us to conclude that all of the allegations contained therein with respect to plaintiff fall within at least one of the cited exclusions. Accordingly, coverage was properly denied for this reason as well.

In light of our conclusion that neither Twin City nor CastlePoint had a duty to defend and/or indemnify plaintiff in the underlying action, we need not consider whether plaintiff gave timely notice of the underlying occurrence/lawsuit to CastlePoint in the first instance or whether the treble damages awarded in the underlying action otherwise would qualify for indemnification under New York law.

Peters, P.J., Stein and McCarthy, JJ., concur. Ordered that the order is affirmed, with one bill of costs.