WESLEY, Circuit Judge, dissenting:
The majority takes comfort in the language of 8 U.S.C. § 1158(a)(2)(D). The text, the majority concludes, unambiguously permits a foreign national to evade the one-year time bar for each and every one of her asylum claims, so long as the application contains at least one claim for which she can establish changed circumstances. I disagree.
The changed-circumstances exception is a measure of legislative grace; it excuses the one-year limit where recent changes materially affect the alien's asylum eligibility. But "eligibility" is a discrete matter. It is particular to the facts and circumstances of each claim for asylum. The majority's reading of the statute, in contrast, extends that act of grace to cover all claims so long as any one claim meets the changed-circumstances exception, and it does so based on a strained reading of the phrase "application for asylum."
The majority's interpretation is, at best, one of two plausible interpretations. When that is the case, the statute is ambiguous, and we may consider other interpretive tools-including Congressional intent. Natural Resources Defense Council, Inc. v. Muszynski, 268 F.3d 91, 98 (2d Cir. 2001). Let's begin with the text. 8 U.S.C. § 1158(a)(2)(D) provides:
An application for asylum of an alien may be considered, notwithstanding [time limitations], if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum *36 or extraordinary circumstance relating to the delay in filing an application within the [statutory time frame].
The majority concludes that "application" refers to the physical document that a putative asylee submits to the Department of Homeland Security. Supra at 33 ("the asylum application itself contemplates that an applicant may apply for asylum on multiple bases, listing various possible claims for asylum . . . and instructing the applicant to `check the appropriate box(es)' to explain why they are applying for asylum or withholding of removal" (quoting Dep't of Homeland Security Form I-589, https://www.uscis.gov/i-589)). The problem is that is not how the statute uses the word.
"[I]dentical words and phrases within the same statute should normally be given the same meaning." FCC v. AT & T, Inc., 562 U.S. 397, 408, 131 S.Ct. 1177, 179 L.Ed.2d 132 (2011) (internal quotation marks omitted). The word "application" appears throughout the statute and therein, Congress has given it a broad, ordinary meaning: an application is a "request." See Application, Black's Law Dictionary (10th ed. 2014) (defining "application" as "[a] request or petition"). For example, 8 U.S.C. § 1187(a)(3) requires an alien to have a valid passport "at the time of application for admission."[1]
I do not, nor could I, dispute that the physical form that an asylum seeker must submit instructs the applicant to indicate the claim or claims upon which she is seeking asylum. Supra at 33 (referencing Dep't of Homeland Security Form I-589, https://www.uscis.gov/i-589). In the narrowest sense, then, "an application for asylum" is not claim-specific: the form expressly invites an applicant to check as many boxes as she sees fit to assert multiple claims on various grounds. The form may allow multiple claims in one application, but there are at least three problems with reading the statute in this way.
First, there is no textual reason to assume that Congress was referring to a physical document when it used the phrase "application for asylum." Indeed, the more natural reading is to give the word "application" the same meaning in this section of the statute as it has in other sections. Substitute the word "application" with the word "request" in section 1158(a)(2)(D) and the text reads: "A request for asylum of an alien may be considered notwithstanding [time limitations], if the alien demonstrates . . . the existence of changed circumstances. . . ." 8 U.S.C. § 1158(a)(2)(D). This reading makes § 1158(a)(2)(D) claim-specific: the use of the singular to describe the "application"
*37 or "request" is a strong textual signal that, in order to evade the one-year bar, an asylum-seeker must demonstrate that her untimely claim has been materially affected by changed circumstances.
Second, giving the phrase "application for asylum" the meaning that the majority ascribes to it ignores that § 1158(a)(2)(D) explicitly references § 1125(b), which, in turn, describes the process for inspection of applicants for admission and which assumes that the process is claim-specific. See § 1225(b)(1)(B)(v) (defining "credible fear of persecution" in the context of an "application for asylum" as "a significant possibility, taking into account the credibility of the statements made by the alien in support of the alien's claim and such other facts as are known to the officer, that the alien could establish eligibility for asylum under section 1158 of this title" (emphasis added)).
Third, the statute uses the phrase "eligibility for asylum," which refers to a determination that an applicant "is a refugee within the meaning of section 1101(a)(42)(A)." 8 U.S.C. § 1158(b)(1)(A). The term "refugee" is defined:
[A]ny person who is outside [his or her home country] and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.
Id. § 1101(a)(42)(A).
Refugee claims are issue-specific: a person may be a racial refugee, a religious refugee, a nationality-based refugee, a social refugee, or a political refugee. To obtain refugee status, a person must establish that she has a complete claim based on at least one of those categories; a half-baked claim based on religious persecution does not cross the finish line with an extra push from a somewhat-persuasive showing of political persecution. See Osorio v. I.N.S., 18 F.3d 1017, 1028 (2d Cir. 1994) (describing I.N.S. v. Elias-Zacarias, 502 U.S. 478, 482-83, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992) and explaining that an applicant for asylum who fears persecution for religious and political beliefs has two claims-one for religious asylum and one for political asylum)). That matters here because although the physical document called an "application for asylum" may encompass more than one claim, a person's "eligibility for asylum" involves one claim at a time.
Specifically, give "eligibility" its dictionary definition: "qualified to participate or be chosen." Eligible, Merriam-Webster, https://www.merriam-webster.com/dictionary/eligible (July 18, 2018). Thus, a person is "eligible for asylum" if the person is "qualified to be chosen for refugee status." A person cannot be "qualified to be chosen for refugee status" unless she can show changed circumstances in her home country that materially affect her successful showing that she is a refugee. This reading of the statute makes sense-it provides a safe haven from the one-year time bar for applicants who, after being in the United States for more than a year, realize that they cannot return to their home country because they have since become refugees and going back now would be dangerous.
A final point on ambiguity. The majority treats asylum determinations as a two-step process, which they say stems from the statute's organizational structure. Step one relates to an alien's ability to file an application, while step two involves the merits of that application. Thus, they conclude, because the one-year bar appears in the statutory section entitled "Authority to apply for asylum," the exceptions to the bar *38 must only come into play at step one-the filing of an application. Supra at 33. I acknowledge that structurally, this makes some sense.
But that reading creates a structural problem as well. The majority does not address the fact that, under their interpretation, the one-year bar (the rule) is swallowed by the exception (changed circumstances): all an asylum seeker need do to escape the one-year bar for a stale asylum claim is allege changed circumstances for an unrelated claim. As an organizational matter, this is problematic. "Congress. . . does not, one might say, hide elephants in mouseholes." Whitman v. Am. Trucking Assns., Inc., 531 U.S. 457, 468, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001).
The majority may disagree that my interpretation of the statute is the correct reading, but it is at least a plausible interpretation. Indeed, the majority acknowledges that "the BIA has been inconsistent in its non-precedential interpretations of § 1158(a)(2)(D)." Supra at 30 n.3. The agency has issued two decisions interpreting the statute; one supports the majority view and the other mine. Compare In re Chen & Wu, A089918765 & A089918766 (B.I.A. April 13, 2012) (unpublished) (concluding that "[t]he plain language of [§ 1158(a)(2)(D)] requires the [alien] to demonstrate changed circumstances that materially affect her eligibility for asylum" and that "[e]ligibility for asylum is not dependent on a specific underlying basis of the asylum claim") with In re Yang, A205621131, at 7-8 (B.I.A. March 11, 2015) (unpublished) (reproduced at CAR 45-45) (reaching the opposite conclusion). That the BIA has been inconsistent in unpublished decisions, though not binding on us, is a good signal that the statute has more than one plausible reading. In short, the statute is ambiguous. Muszynski, 268 F.3d at 98.
Moreover, even if the majority were correct about the plain language of the statute, I would still be forced to dissent. In the "rare and exceptional circumstances. . . where the application of the statute as written will produce a result demonstrably at odds with the intentions of its drafters," Congressional intent controls. Demarest v. Manspeaker, 498 U.S. 184, 190, 1553" index="57" url="https://cite.case.law/us/498/184/#p190">111 S.Ct. 599, 112 L.Ed.2d 608 (1991); see also Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982) ("[I]n rare cases the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters, and those intentions must be controlling."). In such cases, courts have "reserved some scope for adopting a restricted rather than a literal or usual meaning of [a statute's] words where acceptance of that meaning would thwart the obvious purpose of the statute." Griffin, 458 U.S. at 571, 102 S.Ct. 3245 (internal quotation marks and ellipses omitted); see also Dada v. Mukasey, 554 U.S. 1, 14-19, 128 S.Ct. 2307, 171 L.Ed.2d 178 (2008) (in a case involving two provisions of the INA, each of which was unambiguous on its own, "[r]eading the [INA] as a whole" and selecting the interpretation that avoided an absurd result). Looking to the legislative history of the provision at issue here confirms that the majority's reading cannot be right.
In general, the purpose of a statute of limitations is to encourage the timely resolution of disputes before evidence is "obscured by the passage of time." See United States v. Morgan, 380 F.3d 698, 703 (2d Cir. 2004) (quoting Toussie v. United States, 397 U.S. 112, 114-15, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970)). The purpose of § 1158 in particular is to encourage asylum seekers to file within a year of entering the United States and to thereby discourage fraudulent or baseless claims. See Vahora *39 v. Holder, 641 F.3d 1038, 1045 (9th Cir. 2011) ("Congress's paramount objective in enacting the one-year bar was to prevent fraudulent claims.") (citing 141 Cong. Rec. E1635 (Aug. 3, 1995)).
But Congress was also mindful that life is not static. Country conditions can change with an election, a coup, or social instability; and people can experience life-changing conversions of conscience and faith. These kinds of changes are what Congress had in mind when it passed the changed-circumstances exception. Senator Hatch, a major proponent of the one-year bar and the changed-circumstances exception, noted that the legislation was intended to address "situations like those in which the situation in the alien's home country may have changed, the applicant obtains more information about likely retribution he or she might face if the applicant returned home, and other situations that we in Congress may not be able to anticipate at this time." 142 Con. Rec. S11838-40 (Sept. 30, 1996) (statement of Sen. Hatch). The exception, therefore, was designed to capture cases where an immigrant's situation changed in an unpredictable way, making his or her return unsafe. It built in a measure of fairness to asylum seekers by acknowledging the unpredictable nature of prejudice and oppression and ensuring that should an immigrant's personal convictions or home-country conditions change, the time limit will give way even if those changes arise after the one-year bar expires. It was, in other words, intended to create a narrow exception, not to override the one-year bar any time an asylum seeker has multiple claims.
The facts of this case illustrate the failing of the majority's reading of the statute. The Immigration Judge ("IJ") found that Yang established changed circumstances based on her conversion to Christianity. The issue for Yang, however, is that the IJ also found that she was not entitled to asylum on the basis of her conversion claim because "[t]he evidence does not support a well-founded fear of persecution in China on account of [Yang's] religion." CAR at 62. Yang's Form I-589 contains two claims: forced abortion and religious persecution. She is excused for not filing her religious persecution claim within one year of entry into the United States because her conversion occurred years later, but that changed circumstance had no "material[ ] [e]ffect [on] her eligibility for asylum" predicated on her forced abortion. There is no factual or legal connection between Yang's forced abortion in 1994 and her conversion to Christianity in 2012. Yang had a strong asylum claim for forced abortion when she arrived in the United States in 2002, but for some reason she did not raise it until 2012; no circumstances related to this claim have changed.
The obvious purpose of the time bar was to prevent cases where an immigrant enters the United States and only files for asylum years later. The majority's view of the statute abrogates that choice made by Congress. It holds that any claim that is dependent on changed circumstances also revives claims that would be time barred if they were raised solely on their own. The reason for excusing one claim is extended to cover another for which there is no excuse. What is the logic in combining a long since time-barred claim with a distinct, unrelated claim that is predicated on changed conditions affecting only that "new" claim? Why would Congress do that? The majority has not offered any explanation for why Congress would revive stale claims like Yang's, and it has failed to do so for good reason. There is none.
I realize that my view of this statute would deny Yang asylum despite her credible testimony. The IJ did, however, grant her withholding of removal based on the *40 forced abortion, and she will therefore remain in the United States with her son, should she so desire. Citizenship will not be an option for Yang, but she will not be deported. Yang's circumstances warrant empathy. The INA, however, already contains a safety valve to protect people in her position. See 8 C.F.R. § 208.16; Gao v. Gonzales, 424 F.3d 122, 128 (2d Cir. 2005) (holding that an IJ has no discretion not to grant withholding of removal where an applicant establishes her eligibility for asylum and demonstrates that if she were deported, that her life or freedom would be threatened). There is no need for this Court to read the statute in such a way as to replace the congressionally-imposed time limitation with an exercise of judicial mercy. I dissent.

See also § 1255(a) (an immigrant's status may be adjusted by the Attorney General if "(1) the alien makes an application for such an adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed" (emphasis added)); id. § 1229b(b)(1)(A) (providing that the Attorney General may cancel removal and adjust an alien's status under some limited conditions, including where the alien "has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application"); id. § 1229a(b)(4)(B) (referring to an alien's rights in a deportation proceeding as not applying to examining national security evidence proffered "in opposition to the alien's admission to the United States or to an application by the alien for discretionary relief"); id. § 1182(a)(2)(ii)(I) (describing an exception to a bar on admission based on criminal conduct if the alien was a juvenile at the time of the offense and the crime took place "more than 5 years before the date of application for a visa or other documentation and the date of application for admission to the United States").