# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 26, 2020

Lyle W. Cayce
Clerk

No. 19-31023

Federal Deposit Insurance Corporation, as Receiver
for First NBC Bank,

*Plaintiff—Appellee*,

*versus*

Daniel Belcher,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:19-CV-12561

Before Stewart, Clement, and Costa, *Circuit Judges*.

Carl E. Stewart, *Circuit Judge*:

The Federal Deposit Insurance Corporation ("FDIC") filed an action in the district court seeking to enforce an administrative subpoena that ordered Daniel Belcher to submit to a deposition. The court granted the FDIC's motion to enforce the subpoena. Belcher then filed this appeal seeking to vacate the district court's judgment. In the interim, the district court denied Belcher's request for a stay pending the outcome of this appeal. Belcher sat for the deposition. Nevertheless, we now vacate the district

No. 19-31023

court's judgment enforcing the FDIC's subpoena and remand the case for proceedings consistent with this opinion.

## I.

This lawsuit is one of many related to the collapse of First NBC Bank of New Orleans ("the Bank"). In 2013, Ernst & Young ("EY") was hired to audit the financial statements of First NBC Bank Holding Company ("the Holding Company"). The Holding Company's only asset was the Bank. When the Bank began to struggle financially, the Public Company Accounting Oversight Board ("PCAOB") initiated an investigation into EY's audits of the Holding Company.

The subject of the PCAOB's investigation was EY. As part of its investigation, the PCAOB requested numerous documents from EY, which turned them over under the impression that they were confidential and privileged under federal law. *See* 15 U.S.C. § 7215(b)(5)(A). The PCAOB also deposed several of EY's auditors as part of its investigation. Those depositions resulted in hundreds of pages of transcripts. EY also believed those transcripts were confidential and privileged. Among the EY auditors deposed by the PCAOB was Daniel Belcher.

When the Bank failed, the Louisiana Office of Financial Institutions appointed the FDIC to serve as the Bank's receiver. In this capacity, the FDIC began its own investigation into EY's audits of the Holding Company. The FDIC ultimately sought to hold EY liable for significant monetary losses resulting from the Bank's failure. In search of evidence to use against EY, the FDIC asked the PCAOB for documents it had because of its investigation into EY. Among the documents sought by the FDIC were four days' worth of transcripts from Belcher's deposition before the PCAOB. The PCAOB gave the transcripts—and many other documents—to the FDIC.

No. 19-31023

After reviewing Belcher's deposition testimony to the PCAOB, the FDIC decided it also wanted to depose him. It served him with a pre-suit administrative subpoena ordering him to submit to a deposition. On the advice of EY's lawyers, Belcher refused to comply with the subpoena. It was their view that the FDIC's lawyers committed a legal violation and an ethical breach when they sought and obtained documents from the PCAOB that EY believed were confidential and privileged under federal law.

The FDIC responded by filing a complaint against Belcher in the district court seeking to enforce its administrative subpoena pursuant to 12 U.S.C. § 1818(n). The next day, the FDIC moved to enforce the subpoena. Belcher responded with a motion seeking to quash the subpoena and disqualify the FDIC's counsel because of the alleged ethical violations. EY, meanwhile, moved to intervene.

The district court granted the FDIC's motion and denied Belcher's and EY's. The court's decisions turned on its holding that Belcher's rights under federal law were not violated when the PCAOB shared transcripts of his deposition testimony with the FDIC. The court reasoned that even though the material was confidential and privileged under 15 U.S.C. § 7215(b)(5)(A), the FDIC, in its capacity as the Bank's receiver, was entitled to receive the documents as "the appropriate Federal functional regulator" of the Bank under 15 U.S.C. § 7215(b)(5)(B)(ii)(II).

Almost immediately, Belcher filed a notice of appeal. He also moved to stay the district court's order pending the outcome of the appeal. The district court denied his request for a stay. Belcher sat for the deposition on January 28, 2020.[1]

---

[1] The parties agree that Belcher's compliance with the district court's order did not moot this appeal. But mootness is a jurisdictional question, and federal jurisdiction

No. 19-31023

## II.

We generally review the enforcement of an administrative subpoena for abuse of discretion. *See Consumer Fin. Prot. Bureau v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458 (5th Cir. 2018). Conclusions of law that underly the enforcement of such a subpoena, however, are reviewed de novo. *Id.*

## III.

The issue of first impression squarely before us is whether the district court erred by holding that the FDIC, in its capacity as the Bank's receiver, was "the appropriate Federal functional regulator" in this case, entitling it to receive otherwise confidential and privileged documents from the PCAOB.[2]

15 U.S.C. § 7215(b)(5)(A) provides, in relevant part:

> [A]ll documents and information prepared or
> received by or specifically for the [PCAOB] . . .
> in connection with . . . an investigation under this

---

cannot be conferred by an agreement between the parties. *See Giannakos v. M/V Bravo Trader*, 762 F.2d 1295, 1298 (5th Cir. 1985). Nevertheless, we agree with the parties. Because the district court on remand can "fashion *some* form of meaningful relief," this appeal is not moot. *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992). Exactly what that relief might entail is beyond the scope of our concern. However, it is undisputed by the parties that the district court could strike Belcher's deposition testimony before the FDIC.

[2] The FDIC suggests this issue is not squarely before us. Instead, it posits that we need not reach this statutory interpretation issue because we can affirm on the ground that it is "undisputed" that the FDIC had the authority to seek the subpoena, its demand in the subpoena was not too indefinite, and the information sought by it was reasonably relevant to its ongoing investigation into the Bank. *See United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950). As Belcher points out, the district court's order enforcing the subpoena and denying Belcher's and EY's motions as moot turned entirely on its interpretation of 15 U.S.C. §§ 7215 and 6809. Because the district court's judgment was dependent on this holding, Belcher's request that we interpret the statutes de novo is properly within our scope of review.

No. 19-31023

> section, shall be confidential and privileged as an evidentiary matter (and shall not be subject to civil discovery or other legal process) in any proceeding in any Federal or State court . . . .

The parties agree that the transcripts of Belcher's deposition testimony to the PCAOB fell within the purview of this statute because they were documents prepared by the PCAOB in connection with an investigation under 15 U.S.C. § 7215. What they disagree about is whether the FDIC, in its capacity as receiver for the Bank, fits within an exception to this rule.

The applicable exception is provided by 15 U.S.C. § 7215(b)(5)(B)(ii)(II), which provides, in relevant part:

> Without the loss of its status as confidential and privileged in the hands of the [PCAOB], all information referred to in subparagraph (A) may—
>
> . . .
>
>> (ii) in the discretion of the [PCAOB], when determined by the [PCAOB] to be necessary to accomplish the purposes of this Act or to protect investors, be made available to—
>>
>> . . .
>>
>>> (II) the appropriate Federal functional regulator (as defined in section 6809 of this title), other than the [Securities and Exchange] Commission, and the Director of the Federal Housing Finance Agency, with respect to an audit report for an institution subject to the jurisdiction of such regulator[.]

The key language for our purposes appears in subsection (II): "the appropriate Federal functional regulator . . . ." The FDIC argues that it is the appropriate Federal functional regulator in this case. Belcher argues that it's not.

Because subsection (II) expressly incorporates the definition of a Federal functional regulator from 15 U.S.C. § 6809, we turn now to subsection (2) of that statute, which provides:

> The term "Federal functional regulator" means—
>
> (A) the Board of Governors of the Federal Reserve System;
>
> (B) the Office of the Comptroller of the Currency;
>
> (C) the Board of Directors of the Federal Deposit Insurance Corporation;
>
> (D) the Director of the Office of Thrift Supervision;
>
> (E) the National Credit Union Administration Board; and
>
> (F) the Securities and Exchange Commission.

There is no denying that "the Board of Directors of the [FDIC]" is *a* Federal functional regulator under 15 U.S.C. § 6809(2). The question for us is whether the FDIC, acting in its capacity as the Bank's receiver, as opposed to its corporate or governing capacity, is the appropriate one in this case. *See* 15 U.S.C. § 7215(b)(5)(B)(ii)(II).

"Rules of grammar govern statutory interpretation unless they contradict legislative intent or purpose." *Nielsen v. Preap*, 139 S. Ct. 954, 965 (2019) (cleaned up). When Congress modified "Federal functional regulator" with the definite article "the" and the adjective "appropriate," it

made clear that there can only be *one* appropriate Federal functional regulator "with respect to an audit report for an institution subject to the jurisdiction of such regulator." 15 U.S.C. § 7215(b)(5)(B)(ii)(II); *see Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (explaining that the appearance of the definite article "the" before the word "person" in a statute indicated that there was only one "person" who could fit the definition within the statute). The FDIC, however, asks us to interpret this language in a way that would establish *two* appropriate Federal functional regulators in this case: the FDIC, as the appropriate Federal functional regulator of the Bank, and the Federal Reserve, as the appropriate Federal functional regulator of the Holding Company.[3] Such a conclusion would contravene the language of the statute.

The FDIC's response is that because EY's audit reports were "for" the Holding Company *and* the Bank,[4] the statute permits multiple appropriate Federal functional regulators in this case. Assuming that an audit report can be "for" multiple entities, the FDIC is not the "appropriate" Federal functional regulator here. That's because the FDIC was acting in its capacity as the Bank's receiver when it acquired the confidential documents from the PCAOB, not as the Bank's regulator. *See Fed. Deposit Ins. Corp. v. Ernst & Young LLP*, 374 F.3d 579, 581 (7th Cir. 2004) (explaining that "it is helpful" to treat the FDIC as three different entities depending on whether it acts in its corporate, receiver, or regulatory capacity).

The FDIC points us to subsections of 12 U.S.C. § 1821 as evidence of Congress's ability to distinguish between the FDIC in its various capacities to show that its intent was *not* to do so here by referring only to "the Board

---

[3] It is undisputed that the Holding Company is regulated by the Federal Reserve.

[4] Although the Holding Company is the entity that engaged EY to complete the audit reports, they were completed on a consolidated basis, and the Bank later submitted the same reports to the FDIC to comply with various reporting requirements.

of Directors of the Federal Deposit Insurance Corporation" in 15 U.S.C. § 6809(2)(C). *See, e.g.*, 12 U.S.C. §§ 1821(d)(2)(K) ("In carrying out its responsibilities in the management and disposition of assets from insured depository institutions, as conservator, receiver, or in its corporate capacity, the [FDIC] . . . ."); § 1821(d)(10)(B) ("The receiver may, in the receiver's sole discretion, pay dividends on proved claims at any time, and no liability shall attach to the Corporation (in such Corporation's corporate capacity or as receiver) . . . ."). We recognize that Congress's decision to specifically address the FDIC's different capacities in one statute can be evidence of its intent *not* to differentiate among the capacities in another. *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 384 (2013) (relying on Congress's use of certain language in one statute to infer meaning of related language in another statute).

Here, however, context is important. *FCC v. AT & T Inc.*, 562 U.S. 397, 404 (2011) ("The construction of statutory language often turns on context . . . ."). 15 U.S.C. § 6809(2) is a list comprised of regulatory bodies. The Supreme Court has relied "on the principle of *noscitur a sociis*—a word is known by the company it keeps—to 'avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress.'" *Yates v. United States*, 574 U.S. 528, 543 (2015) (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995)). Applying that principle here buttresses our conclusion that the FDIC is not "the appropriate" Federal functional regulator in this case.

"The appropriate Federal functional regulator" here is the Federal Reserve, not the FDIC. Accordingly, it was improper for the PCAOB to disclose to the FDIC, acting in its capacity as receiver for the Bank, transcripts of Belcher's deposition testimony before the PCAOB. *See* 15 U.S.C. § 7215(b)(5)(A).

No. 19-31023

## IV.

We hold that the FDIC was not "the appropriate Federal functional regulator" in this case. Accordingly, the PCAOB lacked the authority under 15 U.S.C. § 7215(b)(5)(B) to share transcripts of Belcher's deposition testimony before it with the FDIC. Because the district court's judgment rested on a contrary interpretation of the applicable statutory language, we VACATE the judgment enforcing the FDIC's administrative subpoena and REMAND this case for proceedings consistent with this opinion.[5]

---

[5] At oral argument, it was brought to our attention that the FDIC, acting in its capacity as the Bank's receiver, recently filed an action against EY in the Eastern District of Louisiana seeking to recover monetary damages based on EY's alleged negligence in auditing the Bank. We leave it to the district court on remand to determine whether there are common issues between that case and this one that may warrant consolidation.

No. 19-31023

Gregg Costa, *Circuit Judge*, dissenting:

This is a strange appeal. The documents that are the subject of this appeal were not turned over in this proceeding. The FDIC filed this case just to enforce an administrative subpoena to depose Daniel Belcher. *See* 12 U.S.C. § 1818(n). After the district court enforced the subpoena, and we refused to stay that decision, the deposition went forward. Because of the controversy about the PCAOB's earlier production of documents, the FDIC did not ask about the documents during the deposition. With the deposition complete and this case not being the source of the disputed production, it seems odd that this appeal would be the vehicle for deciding if the PCAOB's action was lawful. The PCAOB is not even a party to this case.

In other words, the appeal seems moot. This case was a limited action to enforce a deposition subpoena. That deposition has taken place. What more can be done?

Belcher answers—and the FDIC agrees, though its concession does not bind us because mootness is jurisdictional—that there is the possibility of some remedy on remand if we conclude that the PCAOB should not have turned over the documents. That would be true if this district court had ordered production of the PCAOB documents. Even after a party produces documents in response to a district court order, the appeal remains live because a reversal can result in an order to return those documents. *See, e.g., Church of Scientology of Cal. v. United States*, 506 U.S. 9, 13–17 (1992) (holding that appeal of district court order to turn over tape recordings to IRS was not moot because a reversal could result in an order that "the Government [] return the records"); *United States v. Chevron U.S.A., Inc.*, 186 F.3d 644 (5th Cir. 1999) (finding case remained "live" even though documents had been produced because the government "would be required to return the documents" the district court had ordered produced). But because the

district court did not order the PCAOB to produce the Belcher documents, cases like *Church of Scientology* do not apply.

The same problem infects Belcher's argument that there are additional remedies, such as disqualification of the FDIC's counsel, that the district court could impose on remand following an appellate ruling that the PCAOB should not have handed over the documents. Again, that might be true if the documents had been wrongfully produced in this case. But they were produced by the PCAOB before this limited proceeding to compel a deposition began. And neither Belcher nor Ernst & Young has brought suit against the PCAOB to challenge its administrative action turning over the documents. What authority would the district court in this case have to remedy alleged misconduct that did not happen before it?

Consider the following situation. In Lawsuit A, a court orders a defendant to turn over documents to the plaintiff. In Lawsuit B filed years later between the same parties, the plaintiff still possesses the documents from Lawsuit A. I don't see how the court presiding over Lawsuit B has the authority to punish the plaintiff for "wrongfully" obtaining the documents via a court order in Lawsuit A. To be sure, the court in Lawsuit B could limit the use of the Lawsuit A documents in the new suit. A court always has authority to decide what evidence is admissible. But I don't see how Court B can punish a party for something it did with Court A's authorization.

Indeed, Belcher cites no authority allowing a trial court to sanction a party because another legal authority erroneously gave it documents. Nor is there any authority for striking this deposition based on a disclosure that occurred outside this case (especially when the documents were not used in this deposition). As a result, I see no reason to override what common sense suggests: the appeal of an order requiring a deposition is moot once the deposition is over.

No. 19-31023

I thus would not decide the difficult statutory questions about whether the PCOAB should have turned over these documents.  Now that the FDIC has filed a malpractice action against Ernst & Young, the judge presiding over that case could decide the statutory question in deciding whether the documents are admissible.